# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-IA-00565-SCT

*BARTHEL D. WAGGONER AND JACQUELINE*
*M. WAGGONER*

*v.*

*EDWARD A. WILLIAMSON, INDIVIDUALLY;*
*EDWARD WILLIAMSON, P.A.; AND MICHAEL J.*
*MILLER, INDIVIDUALLY*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/21/2007 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON, JR. |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | DAVID JEFFERSON DYE |
| | GREGG LINDSEY SPYRIDON |
| | PHILIP GIPSON SMITH |
| ATTORNEYS FOR APPELLEES: | MATTHEW ANDERSON TAYLOR |
| | JAMES P. STREETMAN, III |
| | JEREMY PETER DIAMOND |
| | ROBERT C. LATHAM |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL |
| | INJURY & PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND REMANDED - 02/26/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Barthel D. Waggoner and Jacqueline M. Waggoner (the Waggoners) sued attorneys

Edward A. Williamson, Edward Williamson, P.A. (Williamson), and Michael J. Miller

(Miller), in the Adams County Circuit Court alleging breach of fiduciary duty, breach of

contract, and negligent misrepresentation arising from the aggregate settlement in ***Annette***

***Williams, et al. v. American Home Products Corp., et al.*** In their complaint against Williamson and Miller, the Waggoners requested a disgorgement of attorneys' fees; compensatory damages; punitive damages, based on allegations of actual malice and gross negligence evincing a willful, wanton and reckless disregard for their rights and commission of actual fraud; attorneys' fees and costs; an accounting of the settlement proceeds; rescission of the representation agreement; and an award of attorneys' fees to Williamson and Miller based upon quantum meruit. Williamson and Miller filed motions for summary judgment which the trial court granted in part and denied in part. The Waggoners thereafter filed with us a petition for an interlocutory appeal, which we granted. *See* M.R.A.P. 5. Finding error in the trial court's order granting in part defendants' motions for summary judgment, we reverse the trial court's order and remand this case to the Circuit Court of Adams County for a jury trial consistent with this opinion.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.     In 1999, Barthel D. Waggoner alleged that he sustained severe injuries resulting from the ingestion of diet drugs manufactured by American Home Products Corporation (AHP). Waggoner decided not to join a class-action suit against AHP and sought individualized representation from attorney Edward A. Williamson, who undertook the representation of Waggoner and his wife, Jacqueline, and included these claims in ***Annette Williams, et al. v. American Home Products Corp., et al.***[1] (hereinafter "the ***Annette Williams*** litigation") filed

---

[1] ***Annette Williams, et al. v. American Home Products Corp.***, ***et al.***, No. 2002-207, Circuit Court of Holmes County, Mississippi.

on May 23, 2000. Although the Waggoners contend that Williamson indicated they would be represented individually, Williamson represented more than thirty (30) named and unnamed plaintiffs from Mississippi in the *Annette Williams* litigation.

¶3.     Williamson also associated with and entered into fee-sharing agreements with attorney Michael J. Miller of Virginia and Edward Blackmon, Jr.[2] of Madison County.  The Waggoners assert that Williamson never disclosed this attorney association to them, and they never approved it.  At the time of this association, Miller represented fourteen clients located in Washington, D.C., and Virginia in substantially similar litigation against AHP. Subsequent to his association by Williamson, Miller represented these fourteen clients against AHP through the *Annette Williams* litigation.

¶4.     On April 24, 2001, Miller negotiated an aggregate settlement[3] in the amount of $73,500,000 with AHP.  This settlement included thirty-one Mississippi claimants, including the Waggoners, and Miller's fourteen Virginia and Washington, D.C., claimants.  Based on an aggregate settlement agreement drafted by a representative for AHP and approved by Williamson and Miller, AHP would not allocate the $55 million offered to the Mississippi claimants and the $18.5 million to the Washington, D.C., and Virginia claimants, but rather required the settling attorneys to comply with the American Bar Association's Model Rules

[2]The Waggoners did not bring suit against Blackmon.

[3]Williamson and Miller dispute whether the settlement was aggregate; however, this contention is without merit based on this Court's ruling in *Williamson v. Edmonds,* 880 So. 2d 310, 314 (Miss. 2004) (stating "Williamson negotiated an aggregate settlement on behalf of the 31 clients and their spouses").

3

of Professional Conduct or the counterpart state rules of professional conduct. Paragraph 5a of the settlement agreement stated:

> AHP shall not be responsible for, or participate in, any allocation, whether (i) as between the Settling Attorneys and the Settling Claimants or (ii) as among any of the Settling Attorneys or (iii) as among any of the Settling Claimants. *The Settling Attorneys represent that they have complied and will comply with Rule 1.8 of the ABA Model Rules of Professional Conduct or its applicable state counterpart(s).*

(Emphasis added). The settling attorneys determined the distribution of the $55 million among the Mississippi claimants. The Waggoners allege that, notwithstanding the agreement of Williamson and Miller to comply with Mississippi Rule of Professional Conduct 1.8, Williamson and Miller did not disclose the following to the Waggoners and the other Mississippi claimants participating in the aggregate settlement: (1) the existence and amount of the aggregate settlement received from AHP and the resulting allocation of funds between the Mississippi, Washington, D.C., and Virginia claimants; (2) the existence and nature of all claims included within the aggregate settlement; and (3) the financial allocation to or participation of each claimant in the aggregate settlement reached with AHP, including the basis for related calculations, distributions of funds, and the required accounting for the aggregate settlement proceeds.

¶5. The Waggoners also allege that, although the settlement was reached in April 2001, they first learned of the aggregate settlement approximately two months later, on or about June 25, 2001, when they received a telephone call directing them to meet Williamson and his assistant at the Adams County Airport. According to the Waggoners, at the airport,

4

Williamson presented the Waggoners with a disbursement statement setting forth the following monetary allocations:

| | |
|---|---|
| Client Name: | Barthel Waggoner |
| Attorney(s): | Edward Williamson |
| Settlement Amount**:** | $3,008,961.75 |
| Attorney's Fee (45%)**:** | $1,354,032.79 |
| MDL fees 3%:[4] | $90,268.85 |
| MTLA Contribution:[5] | $30,042.87 |
| Expenses: | |
| Miller & Associates (case specific): | $    -0- |
| The Williamson Law Firm (case specific) | $15,041.64 |
| Generic Expenses: | $47,475.10 |
| Total Expenses: | $62,516.74 |
| Net to Client: | $1,472,100.50 |

The Waggoners alleged that the meeting at the airport lasted less than twenty minutes, and the Waggoners contend that they did not have an adequate opportunity to review and question the disbursement statement or the means by which the amounts were determined. The Waggoners assert that Williamson required their signatures on the disbursement statement, otherwise they would face possible forfeiture of any right to the settlement.

¶6.     As asserted by the Waggoners, the April 24, 2001 aggregate settlement agreement required the settling attorneys to comply with Rule 1.8 of the American Bar Association Model Rules of Professional Conduct or its applicable state counterparts. Mississippi Rule of Professional Conduct 1.8(g) states in pertinent part "[a] lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or

---

[4]Multi-District Litigation.

[5]Mississippi Trial Lawyers Association.

5

against the clients . . . unless each client consents after consultation, including disclosure of the existence and nature of all the claims . . . involved and of the participation of each person in the settlement."[6] The Waggoners further assert that they would not have signed the settlement documents with AHP had Williamson and Miller fully disclosed to them the items required by the AHP Settlement Agreement and Mississippi Rule of Professional Conduct 1.8(g).

¶7. The Waggoners likewise allege that subsequent to the signing of the disbursement statement, they became aware of other alleged wrongdoing by Williamson and Miller; therefore, they requested an accounting of the "case-specific" and "generic" expenses deducted from the gross recovery allocated to the Waggoners. Williamson, as asserted by the Waggoners, did not cooperate with this request, and instead, filed suit seeking a declaratory judgment in the Chancery Court for the First Judicial District of Hinds County to validate his performance of the representation agreement signed by Mr. Waggoner; however, the Waggoners filed and served the underlying action in the Adams County Circuit Court before receiving service of process in Williamson's chancery court action. The Hinds

---

[6]ABA Model Rule of Professional Conduct 1.8(g) states in pertinent part that "[a] lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or against the clients . . . unless each client gives informed consent, in a writing signed by the client. The lawyer's disclosure shall include the existence and nature of all the claims . . . involved and of the participation of each person in the settlement." For the purposes of today's discussion, we will rely on Mississippi Rule of Professional Conduct 1.8(g).

County Chancery Court matter was transferred to the Adams County Circuit Court where it remains idle, and only the action now before this Court was pursued by the parties.

¶8. On June 30, 2004, after filing a motion for leave to file an amended complaint and receiving permission from the circuit court via entry of an order, the Waggoners filed their Amended Complaint, which added Michael J. Miller, individually, as a defendant, and which alleged breach of fiduciary duty, breach of contract, and negligent misrepresentation against the defendants. In this amended complaint, the Waggoners requested, inter alia, disgorgement of the attorneys' fees taken by Williamson and Miller and an award of attorneys' fees to Williamson and Miller based upon quantum meruit, compensatory damages, punitive damages due to actual fraud by defendants, costs, attorneys fees, and other relief. Likewise, in their amended complaint, the Waggoners detailed alleged wrongdoing by Williamson and Miller with respect to each line-item on the disbursement statement, and they also provided instances in which Williamson and Miller purportedly allocated settlement funds to the detriment of the Waggoners and other claimants in the *Annette Williams* litigation. Williamson and Miller admitted via deposition testimony that they purposefully did not disclose information to the Waggoners regarding the aggregate settlement with AHP.

¶9. Williamson and Miller filed motions for summary judgment on August 15, 2005, and August 25, 2005, respectively. The Circuit Court of Adams County, Judge Forrest A. Johnson presiding, granted partial summary judgment as to "the settlement, the amount of the attorney's fees, about disgorging attorney's fees or having it decided on quantum meruit basis . . . the MDL fees, the MTLA contribution." The trial court denied summary judgment

7

as to the other expenses as listed on the disbursement statement. Therefore, the Waggoners'

claims were left intact only with respect to "case-specific" and "generic" expenses.

¶10. Aggrieved, the Waggoners appeal to us, asserting three issues.[7] However, for the sake

of discussion, we combine and restate the crucial issue before us.

## DISCUSSION

**WHETHER THE TRIAL COURT ERRED IN GRANTING PARTIAL SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS WILLIAMSON AND MILLER.**

¶11. In reviewing a trial court's grant or denial of summary judgment, the well-established

standard of review is de novo. *One South, Inc. v. Hollowell*, 963 So. 2d 1156, 1160 (Miss.

2007) (*citing Hubbard v. Wansley*, 954 So. 2d 951, 956 (Miss. 2007)). Summary judgment

is appropriate where "the pleadings, depositions, answers to interrogatories and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." Miss.

R. Civ. P. 56(c). "A summary judgment motion is only properly granted when no genuine

issue of material fact exists." *Jackson Clinic for Women, P.A. v. Henley*, 965 So. 2d 643,

649 (Miss. 2007) (*citing PPG Architectural Finishes, Inc. v. Lowery*, 909 So. 2d 47, 49

(Miss. 2005); *Miller v. Meeks*, 762 So. 2d 302, 304 (Miss. 2000)). "[T]he evidence must be

---

[7]During the pendency of this appeal, the Court entered an order staying the appeal as to Miller pursuant to 11 U.S.C. § 362, based on a Suggestion of Bankruptcy. However, after the United States Bankruptcy Court for the Southern District of Mississippi entered an order lifting the stay "for the limited purpose of resolving the issues in this interlocutory appeal," this Court entered an order lifting the stay of the appeal and directing the re-issuance of a briefing schedule.

viewed in the light most favorable to the party against whom the motion has been made." *One South*, 963 So. 2d at 1160; *Green v. Allendale Planting Co.*, 954 So. 2d 1032, 1037 (Miss. 2007) (*quoting Price v. Purdue Pharma Co.*, 920 So. 2d 479, 483 (Miss. 2006)). "The moving party has the burden of demonstrating that no genuine issue of material fact(s) exists, and the non-moving party must be given the benefit of the doubt concerning the existence of a material fact." *Id.* (*quoting Howard v. City of Biloxi*, 943 So. 2d 751, 754 (Miss. Ct. App. 2006)). Partial summary judgment is also permissible under our rules, utilizing the same criteria for a grant or denial of a summary judgment and the same standard of review on appeal. *Id.* *See* Miss. R. Civ. P. 56(d); *Brown v. Credit Ctr., Inc.*, 444 So. 2d 358, 363 (Miss. 1984).

¶12.    The trial court found that the Waggoners knowingly agreed as a matter of law to the terms of their settlement agreement. The Waggoners argue, however, that, although they did sign a settlement agreement, they were not aware that it was a part of an aggregate settlement or that other attorneys were involved. They assert that if they had been adequately informed of the nature of the aggregate settlement, they would have demanded a larger portion of the aggregate settlement due to the fact that Barthel Waggoner suffered actual injuries, unlike other Williamson/Miller *Annette Williams* claimants. The trial court found that a question of fact existed only as to whether the Waggoners knowingly agreed to the generic and case-specific-expenses portion of the disbursement statement, but that the Waggoners did, as a matter of law, agree to the attorney's fees, the multi-district litigation fees, and a contribution to the Mississippi Trial Lawyers' Association. Therefore, the Waggoners could pursue their

9

claims only with respect to the "generic" and "case-specific" expenses. In considering the provisions of Mississippi Rule of Civil Procedure 56, it is clear that the trial court inappropriately granted partial summary judgment when there existed genuine issues of material fact, including, inter alia, the issue of Waggoner's share of the aggregate settlement.

¶13. The trial court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried. *Pollard v. Sherwin-Williams Co.*, 955 So. 2d 764, 769 (Miss. 2007) (*quoting Daniels v. GNB, Inc.,* 629 So. 2d 595, 599 (Miss. 1993)). When material facts are in dispute, it is not the province of the trial court to grant summary judgment, thereby supplanting a full trial with its ruling. *Id.* (*quoting Daniels*, 629 So. 2d at 599). The trial court in this case decided genuinely disputed issues of material fact by deciding that the Waggoners knowingly agreed to the gross settlement amount, attorney's fees, multi-district litigation fees, and the contribution to the Mississippi Trial Lawyers' Association. The Waggoners contend that they could not have agreed to the terms of the disbursement statement because Williamson and Miller withheld information vital to the Waggoners' informed consent. They maintain that they were not even informed that the settlement was aggregate. The Waggoners further assert the disclosures specified under Mississippi Rule of Professional Conduct 1.8(g), which requires "disclosures of the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement," were withheld from them.

¶14. During the initial litigation between the Waggoners and American Home Products Corporation (AHP) in which Williamson represented the Waggoners, Williamson caused a

10

representation agreement to be sent to Barthel Waggoner, and it was subsequently signed only by Mr. Waggoner. The agreement required Williamson to diligently represent Mr. Waggoner and stated that "[t]he lawyer shall not compromise or settle said right of action without the knowledge and consent of said client(s)." The other agreement at issue in the case sub judice is the aforementioned contract between AHP and Williamson and Miller settling the diet drug cases. Under the AHP agreement, Williamson and Miller had a contractual duty to comply with Rule 1.8 of the ABA Model Rules of Professional Conduct or the state counterpart.[8] The record reveals the existence of genuine issues of material fact

---

[8]We are mindful of the fact that under the Scope to the Mississippi Rules of Professional Conduct, there appears the following language:

> Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty.

However, compliance with Rule 1.8 was a term of the AHP contract with which Williamson and Miller agreed to comply. Under his contract with Waggoner, Williamson agreed that he would not settle the Waggoners' claims "without the knowledge and consent of said client(s)." Likewise, in **Singleton**, this Court acknowledged the above quoted caveat contained in the Scope of the Mississippi Rules of Professional Conduct, and yet discussed in detail the fiduciary nature of a lawyer's duties to the client and the duties created by the "contract" arising from the agreement to represent a client. **Singleton v. Stegall**, 580 So. 2d 1242, 1244-45 n.4 (Miss. 1991).

11

as to whether this contract was breached, whether the Waggoners were negligently misrepresented, and whether Williamson and Miller breached their fiduciary duty.

¶15.    In *Owen v. Pringle*, this Court held:

> Today a lawyer owes his client duties falling into three broad categories: (a) the duty of care, (b) a duty of loyalty, and (c) duties provided by contract.
> …
> Each lawyer owes each client a second duty, not wholly separable from the duty of care but sufficiently distinct that we afford it its own label, viz. the duty of loyalty, or, sometimes, fidelity. We speak here of the fiduciary nature of the lawyer's duties to his client, of confidentiality and of candor and disclosure.
>
> That an action may lie for the lawyer's breach of these duties is settled.
>
> *Singleton v. Stegall*, 580 So. 2d 1242, 1244-45 (Miss. 1991) (citations omitted) (emphasis added).

*Owen v. Pringle*, 621 So. 2d 668, 671 (Miss. 1993).  As such, summary judgment was improper in the case sub judice. The record establishes that there are genuine issues of material facts in support of the Waggoners' claim of breach of fiduciary duty.  "Without doubt, a lawyer has a duty to inform his client of all matters of reasonable importance related to the representation or arising therefrom."  *Tyson v. Moore*, 613 So. 2d 817, 827 (Miss. 1992) (citation omitted).  The Waggoners argue that "Williamson's and Miller's secretive allocation of aggregate settlement funds themselves among the thirty-one (31) Mississippi clients and the fourteen (14) Washington, D.C. and Virginia clients and the inherent conflicts of interest associated therewith is the clearest example of the breach of common law duty of loyalty presented by the instant case."  In *Tyson*, this Court stated:

12

The duty of loyalty is fiduciary in nature. In the present context its breach may take one of two forms. The first involves situations in which the attorney obtains an unfair personal advantage, such as acquiring property from a client; the second involves situations in which the attorney or other clients have interests adverse to the client in question. We have recently defined the lawyer's duty of loyalty to include a duty to:

> safeguard the client's confidences and property, avoid conflicting interests that might impair the representation, and not employ adversely to the client powers conferred by the client-lawyer relationship.

*Id.* at 823 (*quoting Singleton v. Stegall*, 580 So. 2d 1242, 1245 (Miss. 1991)).

¶16. Furthermore, with respect to the Waggoners' claim of negligent misrepresentation, there are also genuinely disputed issues of material fact. In order to recover on the basis of negligent misrepresentation, the Waggoners must prove:

> 1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the person charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons; (4) that they reasonably relied upon the [attorneys'] misrepresentation or omission; (5) that they suffered damages as a direct and proximate result of such reasonable reliance.

*Spragins v. Sunburst Bank*, 605 So. 2d 777, 780 (Miss. 1992) (emphasis added). The record in the case sub judice reveals the existence of genuine issues of material fact concerning the Waggoners' claim of negligent misrepresentation, and summary judgment was inappropriate. The Waggoners assert that the nature of the settlement with AHP was misrepresented by Williamson and Miller, and they signed the disbursement statement only as a result of the misrepresentations made to them by counsel.

13

¶17. Genuinely disputed issues of material fact also exist with respect to damages. "In order to mature into a tort, the negligent act must proximately produce recoverable damages." *Caves v. Yarbrough*, 991 So. 2d 142, 147 (Miss. 2008) (citing *Methodist Hosp. of Miss. Annual Conference v. Gammel*, 252 Miss. 229, 172 So. 2d 762 (1965)). The Waggoners' expert, Donna Ingram (Ingram), a Certified Public Accountant, a Certified Fraud Examiner, and a Certified Forensic Accountant, accounts that the Waggoners sustained $1,165,228.10 in compensatory damages. The Waggoners contend that the injuries to Barthel Waggoner were equal to or greater than W89,[9] another *Annette Williams* claimant, who received $1,103,286 more than the Waggoners. As such, according to Ingram, the Waggoners are entitled to an increase of $551,642.99. Also, the Waggoners argue that claimants W3 and W91 should not have been included in the gross settlement with AHP, and claimant W17 was improperly allocated additional funds ranging from $450,000 to $885,000. If this is accurate, Ingram states the Waggoners' settlement amount should be increased $309,653.67. Ingram also sets forth the damages the Waggoners allegedly incurred for excessive attorney's fees, multi-district litigation fees, Mississippi Trial Lawyers Association contributions, and other client specific and common benefit adjustments. When viewing this evidence in the light most favorable to the Waggoners, it is clear that genuine issues of material fact exist, and summary judgment is improper. *See Jackson Clinic for Women, P.A.*, 965 So. 2d at 649

---

[9]The numbers or codes represent the various *Annette Williams* claimants in order to protect their privacy.

14

(*citing* **PPG Architectural Finishes, Inc.**, 909 So. 2d at 49; **Miller**, 762 So. 2d at 304); **One South**, 963 So. 2d at 1160; **Green**, 954 So. 2d at 1037 (*quoting* **Price**, 920 So. 2d at 483).

¶18.   The trial court did not cite legal authority to support its ruling dismissing the Waggoners' claims with respect to the gross settlement amount and certain fees or contributions.  However, we discuss here the trial court's ruling by considering the theories of waiver and estoppel and accord and satisfaction.  In a recent case, this Court stated that it does not "accept the proposition that, simply because the plaintiffs accepted the settlement funds, that they waived any right to sue for malpractice." **Channel v. Loyacono**, 954 So. 2d 415, 426 (Miss. 2007).[10]   Clients maintain their right to sue for malpractice even after accepting settlement funds.  *Id.*  As a result, waiver and estoppel do not support the trial court's grant of partial summary judgment, given the circumstances of this case.  With respect to accord and satisfaction, Mississippi law sets forth four elements: "'(1) something of value offered in full satisfaction of a demand; (2) accompanied by acts and declarations as amount to a condition that if the thing is accepted, it is accepted in satisfaction; (3) the party offered the thing of value is bound to understand that if he takes it, he takes subject to such conditions; and (4) the party actually does accept the item.'" *Id.*  (*quoting* **Medlin v. Hazlehurst Emergency Physicians**, 889 So. 2d 496, 498 (Miss. 2004) (citations omitted)).  In the case sub judice, the Waggoners did not demand anything of Williamson and Miller

---

[10]The Court in **Channel v. Loyacono**, 954 So. 2d 415 (Miss. 2007), addressed a similar appeal involving alleged fraudulent conduct by attorneys in the settlement of a case against AHP.

15

except "reasonable care in legal service." *Id.* at 427. For the same reason, this Court in *Channel* determined that the signing of settlement agreements releases the person or entity settling with one's client, not the attorney representing his or her client. *Id.* at 426-27. Thus, in this respect, the settlement agreement signed by the Waggoners released AHP from liability and future claims, not Williamson and Miller, and accord and satisfaction does not undergird the trial court's grant of partial summary judgment.

¶19. The inconsistency in the trial court's ruling must also be noted. Contradicting its earlier reasoning, the trial court held that the Waggoners could present the factual circumstances related to "generic" and "case-specific" expenses to the jury, since the Waggoners could not have known whether these expenses were proper at the time they signed the disbursement statement. The Waggoners maintain that Williamson and Miller never disclosed to them the existence of an aggregate settlement and that they represented to the Waggoners that their settlement with AHP was individually negotiated and effectuated. This has a bearing on the Waggoners' acceptance of the settlement amount, the fees, the expenses, and any other amounts stated on the disbursement statement.[11]

---

[11]Our colleague, Justice Pierce, in his separate opinion, states: "While Waggoner disagrees with the manner in which the funds were allocated, *he believes that the gross amount of his settlement was fair*. In other words, Waggoner is satisfied with the total amount of his settlement." (Emphasis in original). However, to clarify Waggoner's position on this issue, we refer to Waggoner's deposition testimony:

Q: Do you believe that the overall settlement amount of $3,000,000.00 was fair as a gross settlement of your lawsuit?

A: **If I had gotten my fair share it would have been very fair.**

16

¶20. Given that the Waggoners contend that the existence of an aggregate settlement was not disclosed to them, and that the disclosures required by law and the Mississippi Rules of Professional Conduct were not made to them it is apparent that genuine issues of material fact exist as to whether the Waggoners knowingly agreed to any of the items on the disbursement sheet. Certainly one cannot knowingly agree to the terms of an aggregate settlement without even the mere knowledge that an aggregate settlement exists. We find that the trial court erred and exceeded its authority in finding that the Waggoners knowingly agreed to some but not all items on the disbursement statement; therefore, this issue has merit.

¶21. Because we have found that the trial court erred in granting partial summary judgment in favor of Williamson and Miller on the crucial issue before us, the trial court's judgment must be reversed and this case must be remanded to the trial court for a jury trial on all

---

. . .

Q: My question is whether or not – but and excuse me, and it's not a question here today with regard to whether or not you think the gross amount of money is fair, because you've testified that you think the $3,000,000.00 as the gross amount is fair, is that right?

A: Yeah.

(Emphasis added).

17

claims asserted by the Waggoners in their amended complaint. Based on the disposition of this issue, the remaining issues presented in today's appeal need not be discussed.

## CONCLUSION

¶22.    For the reasons stated, the Adams County Circuit Court's grant of partial summary judgment is reversed, and this case is remanded to the Circuit Court of Adams County for a jury trial on all of plaintiffs' claims.

¶23.    **REVERSED AND REMANDED.**

**WALLER, C.J., DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. PIERCE, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER, J.;  WALLER, C.J., JOINS IN PART. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, P.J.**

**PIERCE, JUSTICE, CONCURRING IN RESULT ONLY:**

¶24.    I respectfully concur in result only with the majority opinion today.  I write separately to express my view that, but for this Court's prior precedent in ***Williamson v. Edmonds***, 880 So. 2d 310 (Miss.  2004), I would have affirmed the trial court's ruling to grant summary judgment, in part, on the attorney's fees, multi-litigation district (MLD) fees, and Mississippi Trial Lawyers Association (MTLA) contributions, and deny summary judgment, in part, on the case specific and generic expenses.

¶25.    The basis of this case is a dispute over the allocation of proceeds from a settlement to a former client, Waggoner, from his attorney, Williamson.  While Waggoner disagrees with the manner in which the funds were allocated, *he believes that the gross amount of his settlement was fair*.  In other words, Waggoner is satisfied with the total amount of his

18

settlement. However, Waggoner claims that he is entitled to a *larger portion* of the proceeds from the aggregate settlement and Williamson, consequently, was over paid for his services. In addition, Waggoner disagrees with the allocation of a portion of the gross settlement amount for various fees, contributions, and expenses that were deducted from the gross settlement amount.

¶26. In my opinion, this is a contract dispute as to certain disbursements. While Waggoner artfully couches his suit in terms of a breach of fiduciary duty, breach of contract, and negligent misrepresentation with underlying allegations that Williamson failed to comply with various Rules of Professional Conduct, the record reveals that Waggoner agreed to deductions for certain fees and contributions. That being said, the trial court granted summary judgment in part as to all causes of action for the attorneys fees, MDL fees, and MTLA contribution. The trial court left all claims intact as they related to the case specific expenses and the generic expenses.

¶27. The record reveals that the Waggoners signed numerous documents throughout their representation. Barthel Waggoner signed a Representation Agreement which stated, in part:

> 2.    COMPENSATION: In the event of any recovery had by, settlement obtained for, or payment made to the clients in connection with the above referred to claim or right of action, EDWARD A. WILLIAMSON, shall be entitled to and shall be paid a percentage of the gross proceeds in accord with the following schedule:
>
> > c.    In the event settlement is obtained after suit is filed, and after time permitted for discovery, final pre-trial hearing or the commencement of trial preparation, whichever is earlier ..................................................45%

19

¶28.    Barthel and Jacqueline Waggoner both signed a form itemizing the expenses that would be deducted from their gross settlement amount on May 5, 2001.  This form provided that "I/we realize that the following categories of expenses will be deducted from my/our net proceeds."  The first item on the list was for a six percent deduction for MDL fees.  The form stated, in part:

> Three percent of the gross recovery for expenses ordered to be deducted from each settlement by the multi-district litigation authority and an additional three percent is to be deducted from attorneys' fees, making a total of six percent.

Therefore, the settlement provided for six percent of the Waggoners' gross settlement amount to be deducted for the multi-district litigation fees of which three percent of the fees would be deducted from each settlement and three percent would be deducted from attorney's fees.

¶29.    In addition, this form provided authorization check-boxes for contributions to the Mississippi Trial Lawyers' Association.  The form stated, in part:

> Authorization for contribution to the Mississippi Trial Lawyers' Association.  I/We recognizing the dedicated efforts of the Mississippi Trial Lawyers Association in preserving access to justice for injured individuals, I/We authorize a contribution to the Mississippi Trial Lawyers Association in order to allow full access to justice for those wrongfully injured in the state of Mississippi.
>
> A contribution in the amount of two percent of my recovery is to be made directly to the Mississippi Trial Lawyers Association, Political Fund.
>
> ☐  I authorize                                              ☐  I do not authorize
>
> The purpose of this contribution is the (sic) preserve our system of justice for others through political activities and educational efforts of the Mississippi Trial Lawyers Association.

The Waggoners checked the "I authorize" box to contribute two percent of their recovery to the MTLA. Barthel and Jacqueline Waggoner also signed a confidential release, indemnity, and assignment form on May 5, 2001.

¶30.    On June 25, 2001, Barthel and Jacqueline Waggoner signed a qualified settlement fund settlement agreement and general release which specified the amount of net proceeds that would be received by them. On June 25, 2001, the Waggoners also signed a disbursement statement which itemized the gross settlement amount, deductions, and net proceeds to them. Included in the itemized disbursement were deductions taken for forty-five percent in attorney's fees, three percent for MDL fees, and MTLA contributions. The disbursement statement provided:

<u>DISBURSEMENT STATEMENT</u>

CLIENT NAME: Barthel Waggoner

ATTORNEY(S): Edward Williamson

| | |
|---|---|
| SETTLEMENT AMOUNT: | $3,008,961.75 |
| Attorney's fee (45%) | $1,354,032.79 |
| MDL fee (3%) (See-Item 1of the Expense Agreement): | $ 90,268.85[12] |
| MTLA contribution: | $ 30,042.87 |
| EXPENSES: | |
| MILLER & ASSOCIATES (case specific) | $ -0- |

---

[12] The Waggoners received a $30,000 refund because the MDL judge determined that the fund had an excess amount of funds.

21

| | |
|---|---|
| THE WILLIAMSON LAW FIRM (case specific) | $ 15,041.64[13] |
| GENERIC EXPENSES: | $ 47,475.10 |
| TOTAL EXPENSES: | $ 62,516.74 |
| NET TO CLIENT: | $1,472,100.50 |

I, the undersigned agree to accept the above settlement regarding my case against American Home Products, et al. and my attorneys have informed me of my rights and options regarding this matter. The settlement of the above case was made with my consent and approval. I have read the above statement of cost and distribution of settlement and I agree to the terms of this disbursement. I acknowledge receiving a copy of this statement. I understand that I am personally responsible for the payment of medical bills incurred by me in connection with this claim, including but not limited to liens or subrogation claims from any insurance company or governmental agency. I further agree to hold the offices of Miller & Associates, The Williamson Law Firm, Blackmon & Blackmon and any other attorney associated with my case harmless from any medical, hospital, nurses or other liens or claims which may exist now or in the future in connection with this matter.

¶31. Further, in his deposition testimony, Barthel acknowledged that the settlement was fair:

> Q. My question is whether or not - -but and excuse me, and it's not a question here today with regard to whether or not you think the gross amount of money is fair, because you've testified that you think the $3,000,000.00 as the gross amount is fair, is that right?
>
> A. Yeah.

¶32. Barthel signed the disbursement statement even though he thought the expenses were excessive. When asked why he signed the disbursement statement under these

---

[13] The Waggoners received an almost $5,000 refund on these expenses.

circumstances, Barthel stated "**I wanted the money.** That's the only way I would get [it] is to sign it." (Emphasis added). In his deposition, Barthel also stated that he thought that the attorney's fees were excessive. Nevertheless, Barthel first stated that twenty-five percent fees were reasonable and later added that thirty-five percent attorney's fees were reasonable.

¶33. The record is clear that the Waggoners agreed to have the attorney's fees, MDL fees, and MTLA fees deducted from the gross settlement amount. In ***Russell v. Performance Toyota, Inc.***, 826 So. 2d 719, 726 (Miss. 2002), this Court found that "In Mississippi, a person is charged with knowing the contents of any document that he executes." *Id.* (citing ***J. R. Watkins Co. v. Runnels***, 252 Miss. 87, 96, 172 So. 2d 567, 571 (1965)). The Waggoners signed documents authorizing the deduction of these fees and contributions from their gross settlement amount.

¶34. Notwithstanding this evidence, this Court in ***Edmonds***, a similar case concerning disclosure of an aggregate settlement, stated what constituted disclosure for an aggregate settlement pursuant to Rule 1.8(g).

¶35. Mississippi Rule of Professional Conduct 1.8(g) provides:

> A lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or against the clients, or in a criminal case an aggregated agreement as to guilty or nolo contendere pleas, unless each client consents after consultation, including disclosure of the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement.

¶36. In ***Edmonds***, this Court stated:

> Under Mississippi Rule of Professional Conduct 1.8(g), Williamson obtained a lump sum aggregate settlement for all of his clients during settlement

23

negotiations. In determining whether the proceeds of the aggregate settlement were improperly or fraudulently distributed among the various plaintiffs in the American Home suit, the information requested by the Edmondses is highly relevant to their claims of breach of contract and breach of the duties of care and loyalty. *The client is entitled to know the amount of the settlement, and the basis for the calculations, distributions and accounting of the proceeds of the settlement with American Home.*

*Edmonds*, 880 So. 2d at 320 (emphasis added). This Court further interpreted this disclosure to mean that "[f]or each person, the defendant shall provide: (1) the medical diagnosis, (2) additional information, if any, which affected the amount of settlement, and (3) the amount of settlement." *Id*. at 321.

¶37. The Waggoners clearly agreed to all the deductions from the disbursement statement via written documentation and deposition testimony to that effect. Notwithstanding this evidence and based on the precedent set by *Edmonds*, there is a factual dispute as to whether all required information was disclosed to the Waggoners at the time of the settlement. Thus, the Waggoners now will have an opportunity to prove to a jury that they should have received more money from the aggregate settlement. Thereafter, appropriate deductions and fees as agreed to by the Waggoners should be assessed therefrom pursuant to the documents they knowingly signed. Therefore, the granting of summary judgment was not proper in this case.

¶38. For the foregoing reasons, I concur in result only.

**CHANDLER, J., JOINS THIS OPINION. WALLER, C.J., JOINS THIS OPINION IN PART.**

**KITCHENS, JUSTICE, DISSENTING:**

24

¶39. Today's decision rests centrally on the Waggoners' allegation that their attorneys violated the Rules of Professional Conduct, an allegation that, for the purposes of appeal from summary judgment, we consider in the light most favorable to the Waggoners. *One South, Inc. v. Hollowell*, 963 So. 2d 1156, 1160 (Miss. 2007). Even so, this Court's precedent is clear that this allegation provides no support to the Waggoners, and the trial court's grant of summary judgment should, therefore, be affirmed. Because it is not, I respectfully dissent.

¶40. "Violation of a Rule of Professional Conduct does not give rise to a cause of action nor does it create a presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers . . . . They are not designed to be a basis for civil liability." *Pierce v. Cook*, 992 So. 2d 612, 625-26 (Miss. 2008) (Carlson, J.) (quoting Miss. R. Prof'l Conduct, Scope). *See also Singleton v. Stegall*, 580 So. 2d 1242, 1244-45 (Miss. 1991). Each of the Waggoners' claims flies in the face of this principle. The breach of contract claim rests upon the theory that "one cannot knowingly agree to the terms of an aggregate settlement without even the mere knowledge that an aggregate settlement exists," Maj. Op. at 17; the negligent misrepresentation claim argues that by failing to comply with Rule 1.8, Williamson and Miller "failed to exercise that degree of diligence and expertise the public is entitled to expect of" an attorney, *Hazlehurst Lumber Company v. Mississippi Forestry Commission*, 983 So. 2d 309, 313 (Miss. 2008) (listing elements of negligent misrepresentation); and the breach of fiduciary duty claim contends that Rule 1.8 imposed an actionable duty upon Williamson and Miller. *See Callicutt v. Prof'l Servs. of Potts Camp, Inc.*, 974 So. 2d 216,

25

221 (Miss. 2007) (listing elements of breach of fiduciary duty). Under our holdings in **Pierce** and **Singleton**, each of these arguments must fail as a matter of law. Therefore, even cast in the light most favorable to the Waggoners, the allegations against Williamson and Miller do not create a genuine issue of material fact regarding the duty owed by the attorneys to their clients.

¶41.    The majority purports to be mindful of this principle, despite its ultimate conclusion. Maj. Op. at 11-12, n. 8. But to the extent that this case implicates Rule 1.8, the issue arises only in the agreement between American Home Products and Williamson; therefore, the rule itself is irrelevant in the dispute between the Waggoners and Williamson. Why the majority insists on relying repeatedly upon Rule 1.8, therefore, escapes me. *See* Maj. Op. at 4, 6, 11-12. Nevertheless, given the majority's assurance, I do not read today's decision as one that creates new law in this area. And although I disagree with his ultimate conclusion, I agree with Justice Pierce's thoughtful conclusion that today's decision need not be governed by new law.

¶42.    But because I believe that the majority has taken ill-advised steps toward the creation of new law that is at odds with the explicit purpose of the Mississippi Rules of Professional Conduct, I respectfully dissent.

**GRAVES, P.J., JOINS THIS OPINION.**