# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-01612-SCT

*SHEILA LANG, INDIVIDUALLY AND AS NEXT FRIEND AND NATURAL GUARDIAN OF VINCENT LANG*

*v.*

*BAY ST. LOUIS/WAVELAND SCHOOL DISTRICT*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/21/97 |
| TRIAL JUDGE: | HON. JERRY OWEN TERRY, SR. |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | HARRY M. YOSTE, JR. |
| ATTORNEYS FOR APPELLEE: | THOMAS A. WALLER |
| | DOUGLAS BAGWELL |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 4/29/1999 |
| MOTION FOR REHEARING FILED: | 5/24/99; denied 08/19/1999 |
| MANDATE ISSUED: | 08/26/1999 |

**EN BANC.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. On May 20, 1996, a seventh-grade student was injured on school premises following a school-sponsored band concert. The student alleges the school failed to properly supervise its students and failed to maintain a safe school environment. The issue before this Court is whether the school district is immune from liability under the sovereign immunity statutes expressed in Miss. Code Ann. §§ 11-46-1 to -23 (Supp. 1998), specifically subsections 11-46-9(1)(d) and (1)(g).

## *STATEMENT OF THE CASE*

¶2. Sheila Lang claims that after a school-sponsored concert, her son, Vincent, and his friend were sitting on top of a brick wall waiting for a ride home. The brick wall was approximately seven feet tall, one brick wide, and built of alternating bricks and spaces which made it easy to climb. The brick wall surrounded the school's air conditioning system.

¶3. According to Lang, three other students started an altercation with her son's friend, and her son attempted to escape the hostilities by scrambling off the wall. In doing so, her son fell inside the enclosure formed by the wall and injured his hip. Her son was later diagnosed with a displaced hip that required

surgery and the placement of three pins in his leg. Sheila Lang claims she has incurred over $25,000 in medical expenses for treatment of her son.

¶4. On May 2, 1997, Lang filed suit against the Bay St. Louis/Waveland School District claiming the school district was liable for her son's injuries because it failed to adequately supervise the premises so as to avoid such assaults by others, and failed to provide a safe place to attend school and school-sponsored functions. Lang alleges that as a result of the district's negligence, she and her son have suffered damages in the amount of $250,000.

¶5. The school district filed a motion to dismiss on July 7, 1997, asserting it was immune from suit for the asserted claims. By order dated October 21, 1997, the Circuit Court of Hancock County, Judge Jerry O. Terry, presiding, granted the district's motion and stated the following:

> Since there is no statutory requirement that a School District provide security on school premises, the Court finds as a matter of law that any duty to do so requires the exercise and judgment [sic] of the School District. The duty allegedly breached in this case is therefore one which is discretionary with the School District, and for which the School District enjoys absolute immunity under Miss. Code Ann. § 11-46-9(1)(d) and (g).

¶6. Aggrieved by the decision of the lower court, Lang perfected an appeal to this Court and assigns the following issues for review:

1. WERE THE DISTRICT'S ALLEGEDLY NEGLIGENT ACTS DISCRETIONARY?

2. DID THE TRIAL COURT IGNORE A POTENTIALLY VIABLE CLAIM AGAINST THE DISTRICT IN ITS OPINION?

3. SHOULD THE TRIAL COURT HAVE DELAYED A DECISION ON THE MOTION TO DISMISS PENDING DISCOVERY?

## *LEGAL ANALYSIS*

### *Standard of Review*

¶7. Our familiar standard of review for a dismissal for failure to state a claim under Miss. R. Civ. P. 12(b)(6) is as follows:

> A motion to dismiss under Miss. R. Civ. P. 12(b)(6) raises an issue of law. This Court conducts *de novo* review on questions of law.

> When considering a motion to dismiss, the allegations in the complaint must be taken as true and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim.

**T.M. v. Noblitt**, 650 So. 2d 1340, 1342 (Miss. 1995) (citations omitted).

¶8. The question of law before this Court is whether Bay St. Louis/Waveland School District is immune from liability under the Mississippi Torts Claims Act ("MTCA"), Miss. Code Ann. §§ 11-46-1 to -23, specifically subsections 11-46-9(1)(d) and (1)(g).

¶9. The MTCA provides the exclusive civil remedy against a governmental entity and its employees for acts or omissions which give rise to a suit. Miss. Code Ann. § 11-46-7(1) (Supp. 1998); *L.W. v. McComb Separate Mun. School Dist.*, No. 97-CA-01465-SCT, 1999 WL 174267, at \*2 (Miss. March 31, 1999). Any claim filed against a governmental entity and its employees must be brought under this statutory scheme. *Id*.

¶10. Section 11-46-3 declares it is the intent of the Legislature that the state and its political subdivisions shall be immune from suit at law or in equity. Section 11-46-1 specifically provides that a school district constitutes a "political subdivision" as well as "governmental entity" of the state. Miss. Code Ann. § 11-46-1(i) (Supp. 1998); *see also L.W. v. McComb Separate Municipal School Dist.*, 1999 WL 174267, at \*2. As a political subdivision, the Bay St. Louis/Waveland School District is generally protected from negligence suits by sovereign immunity.

¶11. Section 11-46-5, however, waives immunity for actions for money damages based upon the torts of governmental entities and their employees to the extent of the maximum amount of liability provided for in Section 11-46-15 (which shall not exceed $50,000 for the time Lang's son suffered his injuries). See Miss. Code Ann. § 11-46-15 (Supp. 1998). This waiver is expressly subject to the exclusions or exemptions enumerated in Section 11-46-9.

¶12. Section 11-46-9 provides a governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim based upon an act or omission enumerated therein. Miss. Code Ann. 11-46-9 (Supp. 1998). Consequently, if this Court finds the school district's acts or omissions fall under the subsections of § 11-46-9, then the school district would be exempt from liability.

## II.

## WERE THE DISTRICT'S ALLEGEDLY NEGLIGENT ACTS DISCRETIONARY?

¶13. Lang alleges "[t]he defendant is liable for the plaintiff's damages and her son's injuries because it breached its duty to exercise the necessary supervision on the defendant's premises during a school function to avoid assaults by other students or interlopers." Additionally, Lang alleges "[t]he defendant is also liable for the plaintiff's damages and her son's injuries because it breached its duty to provide a safe place for [her son] to attend school and school sponsored functions." According to Lang, the question before this Court is whether any of the numerous provisions of Section 11-46-9, and specifically subsections (1)(d) and (1)(g), protect the Bay St. Louis/Waveland School District from liability for failing to protect her son or to provide him with a safe place to attend school functions.

¶14. Lang claims the problem that arises from exempting governmental entities from liability for negligence because of performance of discretionary functions is that any act of any entity is ultimately traceable back to some arguably discretionary function. Lang argues that if the law is construed in such a manner, then this Court will be saying that the government has discretion to be negligent, or that its choice to be negligent is a discretionary act under the sovereign immunity statutes.

¶15. Lang further argues that while the statutory provisions that grant governmental entities and their employees an exemption from liability for certain acts may be broad, the law does not shield school districts of this state from an obligation to protect students from reasonably foreseeable harm or an obligation to provide them with safe places to attend school. In support of this argument, Lang cites to the common law

of Mississippi. *See* ***Board of Trustees v. Doe***, 508 So. 2d 1081, 1085 (Miss. 1987) ("As always, the schools retain the responsibility in insuring a safe school environment"). *Accord,* [*L.W.*, 1999 WL 174267, at \*8.](#)

¶16. Lang also asserts that because "it is not always easy to determine whether a public official or public body's conduct is ministerial or discretionary," ***Poyner v Gilmore***, 171 Miss. 859, 158 So. 922, 923 (Miss. 1935) and ***T.M. v. Noblitt***, 650 So. 2d 1340, 1345, the Court should carefully analyze the underlying differences between conduct which should be protected by sovereign immunity and conduct which should not be protected. Lang asks this Court to enunciate a workable standard for deciding questions concerning the statutory waiver of sovereign immunity.

¶17. Lang offers for this Court's consideration the following definition of discretion, with a caveat for its use:

> <u>Definition</u>: Discretion implies the exercise of discriminating judgment within the bounds of reason. It involves the choice of exercising of the will, a determination made between competing and sometimes conflicting considerations. Discretion imparts that a choice of action is determined, and that action should be taken with reason and good conscience in the interest of protecting the rights of all parties and serving the ends of justice. It has been defined as the power and privilege to act unhampered by legal rule, or the capacity to distinguish between what is right and wrong, lawful and unlawful, wise or foolish.

> <u>Caution</u>: The test for a discretionary function is not a test for whether the function involved traditional governmental functions, since the exercise of choice and judgment and the making of responsible decisions take place daily in all human activities without respect to the government context. Moreover, since virtually all human endeavors involve some type of discretion as commonly defined, the discretionary function exception does not include functions which merely involve any element of choice, judgment, or ability to make responsible decisions. Otherwise, every function would fall within the exception.

57 Am. Jur. 2d, *Municipal, County, School, and State Tort Liability* § 119, at 132 (1988). (footnotes omitted).

¶18. In support of her argument, Lang also cites ***Womble v. Singing River Hosp.***, 618 So. 2d 1252 (Miss. 1993), in which this Court considered, among other things, whether doctors employed by a public entity hospital should be protected by qualified immunity.[1] In ***Womble***, the Court held these doctors did not implement policy and were, therefore, not protected by immunity. The Court stated:

> None of the considerations undergirding common law qualified immunity are applicable to medical treatment decisions. First of all, there is nothing inherently governmental about decisions regarding individual medical treatment. They do not involve the formulation of public policy in any respect. Therefore, the notion of promoting governmental decisions that are in the public good is completely inapplicable. Second the fact that a physician or other medical provider is employed by the State does not expose that physician to any greater threat of suit than he would otherwise face in private practice. He therefore will be no more discouraged by the threat of suit from taking actions he thinks are prudent, then he ordinarily would be as a private physician. Furthermore, the threat of suit will not discourage physicians from seeking and accepting the government employment, because they will face the exact same potential exposure to liability that they would as private physicians. Finally, the judicial

system is perfectly capable of adjudicating the reasonableness of medical treatment decisions. Our courts do it every day in medical malpractice actions heard across this state. The medical treatment decisions made by medical personnel at state health institutions are no different from the private medical care decisions that are currently being judged.

*Womble*, 618 So. 2d at 1263-64.

¶19. Lang claims the same arguments can be made for school districts and their employees. She argues there is nothing inherently governmental about decisions regarding care and safety of children. Lang argues private schools are held to standards of reasonableness concerning the safeguarding of their students, as public schools should be. She claims public schools will not go out of business because of the potential for liability for the manner of performance of their duties; but they will, however, perform those duties as if their financial future depends on it. Likewise, says Lang, public school districts will do the same things to protect themselves that private schools do (for e.g., they will purchase insurance to make certain that if their negligent acts injure students or others, the victim will be compensated). Lang further asserts the judicial system is qualified to assess the liability of school districts.

¶20. Additionally, Lang warns that when a governmental employee or entity is cloaked with immunity based on a discretionary act, then citizens have no recourse from the act and no remedy for injuries received as a result of that discretion.

¶21. Lang asks this Court to consider a set of criteria, consisting of four questions, for determining whether conduct is discretionary.

(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective?

(2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would no to change the course or direction of the policy, program or objective?

(3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved?

(4) Does the governmental agency involved possess the requisite constitutional, statutory, or local authority and duty to do or make the challenged act, omission, or decision?

*See Evangelical United Brethren Church v. State*, 407 P.2d 440, 445 (Wash. 1965).

¶22. Finally, Lang argues that if a duty is statutory, then the act is not discretionary under Mississippi law. Lang cites several statutes concerning actions of school employees: (1) Section 37-11-29 requiring "superintendents, principals and teachers shall hold pupils to strict account for disorderly conduct at school, on the way to and from school, on the playgrounds, and during recess"; (2) Section 37-11-53 requiring schools distribute, and obviously maintain, a discipline plan; and (3) Section 37-11-55 requiring schools to develop and disseminate a student code of conduct; and finally (4) Section 37-11-29 requiring school staff to report to the superintendent unlawful activity by a student. Lang surmises that because care for public school students is not discretionary, no protection should be afforded the school district by the exemptions from the waiver of sovereign immunity.

¶23. The school district argues the trial court's dismissal in the case *sub judice* was proper because all discretionary functions or duties involving employees of a governmental entity are protected by the MTCA. The school district asserts that any duty arising out of Lang's allegations with respect to providing "necessary supervision" and "a safe place" for Lang would be characterized as a discretionary function or duty, thereby absolving the school district from liability. In support of this argument, the school district refers the Court to ***T.M. v. Noblitt***, 650 So. 2d 1340, 1344 (quoting the trial court's finding with approval which stated that "[t]he duty to hire and supervise employees is necessarily and logically dependent upon judgment and discretion"); ***Mohundro v. Alcorn County***, 675 So. 2d 848, 854 (Miss. 1996) (summarizing a series of cases which held that road maintenance and repair are discretionary rather than ministerial functions); ***Glover ex rel. Glover v. Donnell***, 878 F. Supp. 898, 899-901 (S.D.Miss. 1995) (characterizing allegations that the activity director of a governmental program failed to properly supervise youth participating in the program and generally failed to act to prevent the plaintiff from being raped at a summer program by other participants as discretionary); ***English v. Thorne***, 676 F. Supp. 761 (S.D. Miss. 1987) (interpreting the Federal Torts Claims Act and stating "[w]here there is room for policy judgment and decision there is discretion"). The school district further argues the Legislature expressly provided in Subsection (1)(d) that a governmental actor may abuse his discretion and still remain immune. According the school district, it is "beyond doubt" that Lang can show no facts that would overcome the immunity provided to the school district by Subsections 11-46-9(1)(d) and (1)(g).

### Subsection 11-46-9(1)(d)-- discretionary

¶24. Section 11-46-9(1)(d) provides the school district shall not be liable for any claim "[b]ased upon the exercise or performance or the failure to exercise or perform a **discretionary function or duty** on the part of a governmental entity or employee thereof, whether or not the discretion be abused." Miss. Code Ann. § 11-46-9 (1)(d) (Supp. 1998) (emphasis added). In the case *sub judice,* whether the school district is protected by this discretionary function exception depends on whether the duty the school district owed Lang is properly characterized as discretionary or ministerial.

¶25. In ***Mosby v. Moore***, 716 So. 2d 551, 557 (Miss. 1998) (*quoting* ***Barrett v. Miller***, 599 So. 2d 559, 567 (Miss. 1992), the Court described the discretionary and ministerial distinction as follows:

> While there is no flexible rule to distinguish whether an act is ministerial or discretionary, the most important criteria is if the duty is one which has been positively designated, the duty to perform under the condition specified, not being dependent upon the officer's judgment or discretion, the act or discharge thereof is ministerial.

*See also* ***L.W. v. McComb Separate Municipal School Dist.***, 1999 WL 174267, at *7; ***T.M. v. Noblitt***, 650 So. 2d 1340, 1345 (Miss. 1995); ***Davis v. Little***, 362 So. 2d 642, 644 (Miss. 1978); ***Poyner v. Gilmore***, 171 Miss. 859, 864, 158 So. 922, 923 (Miss. 1935).

¶26. Section 37-9-69 positively imposes upon school personnel the duty to hold students to strict account for disorderly conduct at school:

> It shall be the duty of each superintendent, principal or teacher in the public schools of this state to enforce in the schools the courses of study prescribed by law or by the state board of education, to comply with the law in distribution and use of free textbooks, and to observe and enforce the statutes, rules and regulations prescribed for the operation of schools. **Such superintendents, principals and**

**teachers shall hold the pupils to strict account for disorderly conduct at school, on the way to and from school, on the playgrounds, and during recess.**

Miss. Code Ann. § 37-9-69 (1996) (emphasis added).

¶27. Section 11-46-9 (1)(b) provides that a governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim "[a]rising out of any act of omission of an employee of a governmental entity exercising **ordinary care** in reliance upon, **or in the execution or performance of, or in the failure to execute or perform**, a statute, ordinance or regulation, whether or not the statute, ordinance, or regulation be valid. Miss. Code Ann. § 11-46-9(b) (Supp. 1998) (emphasis added). Accordingly, the school district and its employees are protected from liability while performing or failing to perform a statutory duty so long as ordinary care is exercised. However, when ordinary care is not exercised, neither the school district nor its employees will be protected from liability for performing or failing to perform a statutorily imposed duty.

¶28. The District's administrators and teachers in the case *sub judice* had a statutorily imposed duty to hold students to strict account for disorderly conduct at school. *See L.W. v. McComb Separate Municipal School Dist.*, 1999 WL 174267, at *6, 7. If they failed to exercise ordinary care in either performing or failing to perform this duty, then sovereign immunity will not protect the District. *See Id.* The question of whether ordinary care was, in fact, exercised is for the trial court, sitting without a jury, to decide. *See* Miss. Code Ann. § 11-46-13(1) (Supp. 1998).

¶29. The school district argues that with Subsection 11-46-9(1)(d) the Legislature expressly stated that it does not matter "whether or not the discretion be abused" in order for the governmental entity to be exempt from liability. The school district claims this express language demonstrates the Legislature's intent to eliminate consideration of any additional requirements in determining whether a governmental action or inaction was discretionary. However, Lang's allegation that the school district failed to provide "necessary supervision" for her son does not fall under this discretionary exception. As previously stated, the administrators and teachers in the case *sub judice* are required by statute to hold students to strict account for disorderly conduct at school. In other words, the school district's duty to control and discipline students is ministerial not discretionary, and therefore the discretionary exception does not apply.

### Subsection 11-46-9(1)(g)-- adequate governmental services

¶30. Section 11-46-9(1)(g) provides that the school district shall not be liable for any claim "[a]rising out of *the exercise of discretion* in determining whether or not to seek or provide the resources necessary for the purchase of equipment, the construction or maintenance of facilities, the hiring of personnel and, in general, the provision of adequate governmental services." Miss. Code Ann.§ 11-46-9(1)(g) (Supp. 1998) (emphasis added).

¶31. Lang asserts the school district is required by statute to construct and maintain the school district's real property. Section 37-7-301 (d) states that the school board is "[t]o have the responsibility for the erection, repairing and equipping of school facilities and the making of necessary school improvements." Miss. Code Ann. § 37-7-301(d) (1996). Also specified is the school board's duty "[t]o be the custodians of real and personal school property and to manage, control and care for the same." Miss. Code Ann. § 37-7-301(c) (1996). Lang again argues the fact that such duties are required by statute removes them from the realm of discretion and places them squarely in the area of mandatory or ministerial duties.

¶32. The school district argues the express language of Subsection 11-46-9(1)(g) evinces that the Legislature has already found that any "determin[ation] of whether or not to seek or provide the resources necessary for the purchase of equipment, the construction or maintenance of facilities, the hiring of personnel and, in general, the provision of adequate governmental services" is "the exercise of discretion." The school district claims this subsection is applicable to any of Lang's allegations that the school district is obligated to provide "necessary supervision" and "a safe place," because it provides immunity for hiring decisions and adequacy of governmental services. Additionally, the school district claims Lang's allegation concerning the school district's obligation to provide "a safe place" from the standpoint of the actual facility would be covered under the clause concerning construction or maintenance of facilities.

¶33. While Section 11-46-9(1)(g) provides the school district is immune for certain policy decisions, such as how much money to allocate to this or that, it does not immunize the school district for failure to fulfill its statutory obligations. The school board is required by statute to erect, repair and equip school facilities as well as maintain, control and care for the same. Section 11-46-9(1)(b) provides the school district and its employees are protected from liability while performing or failing to perform such statutory duties so long as ordinary care is exercised. Whether ordinary care was, in fact, exercised is a question for the trial court, sitting without a jury, to decide. *See* Miss. Code Ann. § 11-46-13(1) (Supp. 1998).

## III.

### *DID THE TRIAL COURT IN ITS OPINION IGNORE A POTENTIALLY VIABLE CLAIM AGAINST THE DISTRICT?*

¶34. Lang claims that in her complaint she charged the school district did not provide a safe place for her son to attend school activities based on the construction of the facility. She argues that by premising its entire decision on the discretionary exception found in Section 11-46-9(1)(d), the trial court completely overlooked this allegation. Paragraph III of the complaint alleged:

> Vincent was sitting on top of a brick wall approximately 7 feet tall that surrounded and hid the air conditioning system. The wall was one brick wide and built of alternating brick and spaces which made it easy to climb. On information and belief, the wall is a place where students frequently sit during breaks from school. There are no written rules against doing so, nor are there any signs that prohibit doing so, although students are sometimes told to get off of the wall.

¶35. The school district argues that should this Court find that a cause of action for an alleged failure to provide a safe place exists, it would still be immune under Subsection 11-46-9(1)(b) for any claim arising under Section 37-7-301. However, Subsection 11-46-9(1)(b) requires a minimum standard of ordinary care be exercised by the governmental actor in order to invoke sovereign immunity.

¶36. The school district also argues that should a cause of action exist in the instant case, it would still be immune under Subsections 11-46-9(1)(d) and (1)(g). The school district argues that while Section 37-7-301 enumerates its powers and duties, it does not provide how the school board is to perform these powers and duties. According to the school district, since the Legislature did not specify the "manner" or "conditions" for performance of these powers and duties, they are discretionary. Also, the school district claims any common law duties concerning premises liability are not specific in "manner" or "conditions," and are thus discretionary. The school district argues that if road maintenance and repair are discretionary rather than ministerial functions, then it is logical to conclude that maintenance and repair of school facilities would

be discretionary also. *See* **[Mohundro v. Alcorn County](#)***, 675 So. 2d 848, 854 (Miss. 1996)*. Moreover, the school district claims that since the Legislature expressly provided it does not matter whether or not the discretion be abused in order to be exempt from liability, no further determination needs to be made other than whether the allegations concern a discretionary function or duty. The school district further argues Subsection 11-46-9(1)(g) provides immunity with respect to "the construction or maintenance of facilities." Miss. Code 11-46-9(1)(g) (Supp. 1998). In addition, the school district argues Lang never amended her complaint to specifically allege the aforementioned statutes.

¶37. In ruling on a motion to dismiss, the trial court is required to accept as true the allegations in the complaint. *Noblitt*, 650 So. 2d at 1342. The motion should not be granted unless it appears it is "beyond doubt" that the plaintiff will be unable to prove any set of facts to support her claims. Because we have already recognized the school district has a statutory duty to supervise students as well as to maintain school facilities, we hereby reverse the trial court's judgment of dismissal. We find Lang could prove a set of facts to support her claim that she was owed a duty, the breach of which should incur liability. That is not to say that the school district was, in fact, negligent, but simply that Lang could conceivably demonstrate the school district was negligent.

## *IV.*

### *SHOULD THE TRIAL COURT HAVE DELAYED A DECISION ON THE MOTION TO DISMISS PENDING DISCOVERY?*

¶38. Lang contends the case should not have been dismissed without discovery. Lang argues that in addition to the statutorily mandated duties discussed above, the district may have set its own duties through internal rules, regulations, procedures, and directives. Lang contends these may have been written or oral. Lang also suggests the Department of Education may have made similar requirements in the form of regulations and policies. Lang points out Section 37-9-7 requires school officials "to observe and enforce the statutes, *rules and regulations* prescribed for the operation of schools." Miss. Code Ann. § 37-9-7 (emphasis added).

¶39. The school district argues discovery should be held in abeyance until the school district's immunity defenses are resolved. The school district claims discovery should not proceed in the case *sub judice* because the record is bare of any facts that would overcome the immunity provided by Section 11-46-9.

¶40. The instant action was dismissed upon the school district's Rule 12(b)(6) motion. The purpose of a motion to dismiss is to test the legal sufficiency of the complaint. *T.M.,* 650 So. 2d at 1345-46. We are of the opinion that a decision was rendered prematurely in this case. This matter is better suited for consideration on a Rule 56 motion for summary judgment following further discovery rather than for consideration based simply on Lang's complaint. Because we cannot say that it appears beyond a doubt Lang can prove no set of facts in support of her claim which would entitle her to relief, we reverse the judgment of the Hancock County Circuit Court, and we remand this case for further proceedings consistent with this opinion.

¶41. **REVERSED AND REMANDED.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE, SMITH, MILLS AND WALLER, JJ., CONCUR. COBB, J., NOT PARTICIPATING.**

1. It should be noted that in ***Barnes v. Singing River Hosp***., 1999 WL 22325, at \*2 (Miss. Jan. 21, 1999), the Court refused to apply ***Womble,*** a pre-MTCA case to analyze the MTCA.