IN THE SUPREME COURT OF MISSISSIPPI

NO. 2008-IA-01207-SCT

*COVINGTON COUNTY SCHOOL DISTRICT*

*v.*

*LUTRICIA MAGEE, INDIVIDUALLY AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF LONNIE C. MAGEE, JR., DECEASED, AND ALL OTHERS WHO ARE ENTITLED TO RECOVER UNDER THE WRONGFUL DEATH AND SURVIVAL STATUTE*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/25/2008 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WILLIAM BUCKLEY STEWART, SR. |
| | ROBERT P. THOMPSON |
| ATTORNEY FOR APPELLEE: | GERALD PATRICK COLLIER |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND RENDERED - 01/28/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLSON, P.J., DICKINSON AND PIERCE, JJ.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Lutricia Magee, individually and on behalf of the wrongful-death beneficiaries of Lonnie C. Magee, Jr., deceased, and all others who are entitled to recover under the wrongful-death statute, filed suit against the Covington County School District, alleging negligence and *res ipsa loquitur*.  The Covington County School District filed its Motion for Summary Judgment, which the Covington County Circuit Court granted in part and denied

in part. Finding that the circuit court erred by failing to grant the District's motion for summary judgment *in toto*, we reverse the circuit court's order and render judgment here in favor of the Covington County School District.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2. On August 8, 2007, Lonnie C. Magee, Jr. (Lonnie), age seventeen, was a student at Mount Olive Attendance Center and a member of the school's football team. During the course of football practice on an admittedly hot August day, Lonnie collapsed. Emergency medical personnel arrived to find Lonnie unresponsive. CPR and all other lifesaving efforts ultimately failed, and Lonnie was pronounced dead at the Covington County Hospital in Collins, Mississippi. Heat stroke allegedly was the cause of Lonnie's death.

¶3. On February 25, 2008, Lutricia Magee (Magee), individually and on behalf of the wrongful-death beneficiaries of Lonnie C. Magee, Jr., deceased, and all others who are entitled to recover under the wrongful-death statute, filed her First Amended Complaint[1] in the Circuit Court of Covington County, asserting claims of negligence and *res ipsa loquitur*. The Covington County School District (the District) subsequently filed its Answer and Defenses on March 20, 2008, and its Motion for Summary Judgment on May 14, 2008. Magee filed her response, and the District filed its rebuttal. On June 20, 2008, a hearing was held on the motion for summary judgment, Judge Robert G. Evans presiding. Judge Evans ruled: "I believe there does exist genuine issues of material fact. And over-simplifying the

---

[1]The original complaint is not part of the record before this Court.

2

questions intentionally, I'll put it into one and say the question is whether the school district provided a safe environment." The trial court subsequently entered an Order, stating "that genuine issues of material fact exists [*sic*] and the Defendant's Motion for Summary Judgment is denied, but granted, in part, as to Plaintiff's claim of *Res Ipsa Loquitur*." As a result, the District filed its Petition for Permission to Appeal Interlocutory Order and for Stay of Trial Court Proceedings, asserting the trial court erred in denying, in part, its motion for summary judgment.[2] This Court granted the District's petition for interlocutory appeal.

## DISCUSSION

¶4.     The District couches the issue before the Court in these terms:

> Whether the claims of the [plaintiff] against the [District] are based upon the District's exercise or performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion be abused, thereby entitling the District to immunity from the [p]laintiff's claims pursuant to [the Mississippi Tort Claims Act].

On the other hand, Magee couches the issue(s) before the Court as follows:

> Whether the claims of the [plaintiff] against the [District] are based upon the District's exercise of ordinary care in reliance upon, or the execution or performance of or the failure to exercise or perform a statute, ordinance, or regulation?

> Whether [the District] has a statutory duty to provide a safe environment for its students and to minimize risks to its students and whether this duty applies to decisions and/or conduct related to allowing football practice to be conducted in dangerously hot and humid temperatures?

We thus combine and rephrase these issues into one issue for the sake of today's discussion.

_____

[2]The trial court's grant of summary judgment as to the *res ipsa loquitur* claim is not before this Court.

3

**WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT,
*IN TOTO*, THE DISTRICT'S MOTION FOR SUMMARY JUDGMENT.**

¶5.     This Court's well-established standard of review for a trial court's grant or denial of summary judgment is *de novo*. ***Waggoner v. Williamson,*** 8 So. 3d 147, 152 (Miss. 2009) (citing ***One South, Inc. v. Hollowell***, 963 So. 2d 1156, 1160 (Miss. 2007); ***Hubbard v. Wansley***, 954 So. 2d 951, 956 (Miss. 2007)).  Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Miss. R. Civ. P. 56(c).  "The moving party has the burden of demonstrating that no genuine issue of material fact(s) exists, and the non-moving party must be given the benefit of the doubt concerning the existence of a material fact." ***Waggoner***, 8 So. 3d at 152-53 (citations omitted).  Further, "[p]artial summary judgment is also permissible under our rules, utilizing the same criteria for a grant or denial of a summary judgment and the same standard of review on appeal." *Id.* at 153 (citations omitted). *See* Miss. R. Civ. P. 56(d).

¶6.     The District argues that its alleged acts or omissions were not ministerial, but discretionary in nature, thereby entitling the District to immunity (exemption from liability) pursuant to Mississippi Code Section 11-46-9(1)(d).  Magee, however, contends that the District failed to perform its statutory duty to provide a safe environment for its students; therefore, Mississippi Code Section 11-46-9(1)(b) is triggered, and it is an issue of fact as to

whether the District exercised ordinary care. *See* Miss. Code Ann. §§ 11-46-9(1)(d), (b)

(Rev. 2002).

¶7.	The District constitutes a "governmental entity" and a "political subdivision" pursuant

to the Mississippi Tort Claims Act (MTCA). Miss. Code Ann. § 11–46-1 (Rev. 2002). The

MTCA provides the exclusive remedy against a governmental entity or its employee for the

act or omission which gave rise to the suit. Miss. Code Ann. § 11-46-7(1) (Rev. 2002). The

intent of the MTCA is to provide immunity from suit to the state and its political

subdivisions; however, the MTCA waives immunity for claims for money damages arising

out of the torts of government entities and employees while acting within the course and

scope of their employment to the extent set forth in the MTCA. Miss. Code Ann. §§ 11-46-

3(1), 11-46-5(1) (Rev. 2002). This waiver of immunity is subject to exemptions. Miss. Code

Ann. § 11-46-9 (Rev. 2002). Mississippi Code Annotated Section 11-46-9 states, in pertinent

part:

> (1) A governmental entity and its employees acting within the course and
> scope of their employment or duties shall not be liable for any claim:
> . . .
>      (b) Arising out of any act or omission of an employee of a
> governmental entity exercising ordinary care in reliance upon, or in the
> execution or performance of, or in the failure to execute or perform, a statute,
> ordinance or regulation, whether or not the statute, ordinance or regulation be
> valid;
> . . .
>      (d) Based upon the exercise or performance or the failure to exercise or
> perform a discretionary function or duty on the part of a governmental entity
> or employee thereof, whether or not the discretion be abused;
> . . .

Miss Code Ann. §§ 11-46-9(1)(b), (d) (Rev. 2002).

5

¶8.   The District submits that its alleged conduct constitutes discretionary behavior, whereas Magee argues that a school district's statutory duty to provide a safe environment has been positively imposed by law, thus its actions and duties are ministerial. "A duty is discretionary if it requires the official to use her own judgment and discretion in the performance thereof." *Stewart ex rel. Womack v. City of Jackson*, 804 So. 2d 1041, 1048 (Miss. 2002) (citations omitted). On the other hand, "an act is ministerial '(if) the duty is one which has been positively imposed by law and its performance required at a time and in a manner or under conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion.'" *Id.* (quoting *L.W. v. McComb Separate Mun. Sch. Dist.*, 754 So. 2d 1136, 1141 (Miss. 1999)). If the District's conduct is deemed ministerial, it is then protected from liability only if ordinary care is exercised in performing or failing to perform the statutory duty or regulation. *Id.* (quoting *Lang v. Bay St. Louis/Waveland Sch. Dist.*, 764 So. 2d 1234, 1240 (Miss. 1999)).

¶9.   Magee argues that the District failed to exercise ordinary care in reliance upon, or in the execution or performance of, or in the failure to execute or perform, a statute, ordinance or regulation. *See* Miss. Code Ann. § 11-46-9(1)(b) (Rev. 2002). Magee relies on Mississippi Code Section 37-9-69 as well as this Court's mandate that school personnel are required to use ordinary care in administering public schools, and "[s]chools have the responsibility to use ordinary care to provide a safe school environment." *L.W.*, 754 So. 2d at 1142-43 (citations omitted). *See also Pearl Pub. Sch. Dist. v. Groner*, 784 So. 2d 911,

6

915 (Miss. 2001); ***Henderson ex rel. Henderson v. Simpson County Pub. Sch. Dist.***, 847 So. 2d 856, 857 (Miss. 2003). Magee's reliance, however, is misplaced. Section 37-9-69 states:

> It shall be the duty of each superintendent, principal and teacher in the public schools of this state to enforce in the schools the courses of study prescribed by law or by the state board of education, to comply with the law in distribution and use of free textbooks, and to observe and enforce the statutes, rules and regulations prescribed for the operation of schools. Such superintendents, principals and teachers *shall hold the pupils to strict account for disorderly conduct* at school, on the way to and from school, on the playgrounds, and during recess.

Miss. Code Ann. § 37-9-69 (Rev. 2007) (emphasis added).

¶10.    This Court has applied this statute only in a limited context, mainly in cases concerning the disorderly conduct of students, or intentional acts on the part of individuals, and has never applied it to the timing or oversight of football practice. In reference to Section 37-9-69, this Court stated that "[t]his statute mandates that school personnel maintain appropriate control and discipline of students while the children are in their care." ***L.W.***, 754 So. 2d at 1142. ***L.W.*** involved a student assault on another student. ***Id.*** at 1142-43. *See also* ***Henderson***, 847 So. 2d at 857-58 (student taunted and assaulted by another student); ***Lang,*** 764 So. 2d at 1240-41 (fighting students caused injury to innocent student). Consistent with our caselaw interpreting this statute, and based on the facts and circumstances before us as revealed in the record, Mississippi Code Section 37-9-69 does not impose a statutory duty on the District in today's case.

¶11. Before moving on, we note that Magee asserts that the District has admitted the applicability of Section 37-9-69 in response to her (Magee's) requests for admission propounded during discovery. We disagree. In Request For Admission No. 12, Magee requested the District to admit that it had "a statutory duty to provide a safe environment for its students," and the District admitted this fact. However, in Request For Admission No. 17, Magee requested the District to admit that it had "a statutory duty to use ordinary care in administering public schools and to take ordinary and reasonable steps to minimize risks for its students." In its response to this request for admission, the District stated:

> Responding to Request No. 17, **Defendant admits** only that from Miss. Code Ann. § 37-9-69, the Courts of this state have fashioned a **ministerial duty to maintain a safe environment for the students** that has been applied by the Courts in a limited context. . . .

(Emphasis in original). We have stated that Mississippi Rule of Civil Procedure 36 "is to be enforced according to its terms." **Educ. Placement Sers. v. Wilson**, 487 So. 2d 1316, 1318 (Miss. 1986) (citations omitted). However, this Court likewise has stated that "[w]hile Rule 36 is to be applied as written, it is not intended to be applied in Draconian fashion." **DeBlanc v. Stancil**, 814 So. 2d 796, 801 (Miss. 2002). The District states that, while it was duty-bound to respond truthfully to Request For Admission No. 12, couched in general language, this admission cannot be viewed in a vacuum, but instead must be read together with its Response to Request For Admission No. 17. Consistent with **DeBlanc**, we agree. **Id.** The District, while acknowledging the existence of the provisions of Section 37-9-69 and our caselaw interpreting this statute, likewise qualified its admission that the mandatory duty

8

placed upon public schools and their employees by statute has been applied by this Court in a limited context.[3]  Thus, in the end, the District's responses to certain requests for admissions are of no moment concerning this Court's determination as a matter of law on the issue of whether Section 37-9-69 is applicable to today's case.

¶12.  Magee also argues that Mississippi Code Section 37-9-14 gives rise to a statutory duty based on the facts of this case.  This argument is simply without merit.  Section 37-9-14 sets forth the responsibilities and powers of the superintendent, and in no way does this statute imply any duties pertaining to the oversight of athletic practices.  *See* Miss. Code Ann. § 37-9-14 (Rev. 2007).

¶13.  The District asserts, based on both ***Prince v. Louisville Municipal School District***, 741 So. 2d 207 (Miss. 1999), and ***Harris v. McCray***, 867 So. 2d 188 (Miss. 2003), that the District's alleged conduct was discretionary, and summary judgment should have been granted pursuant to Mississippi Code Section 11-46-9(1)(d).  In ***Prince*** and ***Harris***, this Court deemed the coaching responsibilities of coordinating and supervising practice to be discretionary acts.  *See **Prince**,*[4] 741 So. 2d at 212 (affirmed trial court's grant of summary

_____

[3]In its arguments before the trial court, the District, through counsel, stated that "[Magee's counsel]'s asked us to admit in a vacuum admission or denial concerning general duties governed by Mississippi law.  We don't deny that there is a duty to take care of these students, Your Honor.  That would be foolish for us to sit here and suggest otherwise. What we're saying is, these specific allegations that they are alleged [*sic*] invoke discretionary acts as stated in the Harris and in the Prince case. The [supreme] court has spoken on this."

[4]As we stated in ***Harris***, "[w]hile admittedly involving application of 'pre-***Pruett***' common law concerning whether the act involved was a discretionary or ministerial function, our decision in ***Prince*** is enlightening." ***Harris***, 867 So. 2d at 191. *See **Pruett v.***

9

judgment based on qualified immunity); *Harris*, 867 So. 2d at 192-93 ("trial court did not err in its determination that the School District and Coach McCray were exempted from liability"). This Court stated in *Harris*:

> We must balance the serious negative repercussions which could result for all extra-curricular school activities if the discretionary decisions of coaches are not exempt from liability pursuant to Miss. Code Ann. § 11-46-9(1)(d) with the need for providing a well-rounded education. There is nothing in the record to imply that Coach McCray's actions as a football coach on August 21, 1995, violated any statute, ordinance, or regulation.

*Harris*, 867 So. 2d at 192. Likewise, in today's case, nothing in the record indicates that the District and/or the football coaches (or any District employee or staff member) violated any statute, ordinance, or regulation concerning conducting football practice, and the conduct at issue constitutes discretionary behavior.

¶14. Further, Magee contends that, even if the acts or omissions of the District are discretionary, they still do not invoke the protection of social, economic, or political policy. This Court adopted the public-policy-function test and stated "only those functions which by nature are policy decisions, whether made at the operational or planning level, are protected." *Jones v. Miss. Dep't of Transp.*, 744 So. 2d 256, 260 (Miss. 1999). Certainly the discretionary acts at issue are grounded in public policy. In the *Harris* case, discussed *supra*, this Court reasoned:

> Who knew the football players of the 1995 Jefferson County High School football team better than Coach McCray? He knew what players would complain only when hurt and what players would complain at a drop of a hat

---

*City of Rosedale*, 421 So. 2d 1046 (Miss. 1982).

simply to be able to take a break from football practice on a hot August day. Coaches have to know what motivates their players and what does not. Coaches know that in order to discipline football players, each one is a different human being – one player may be disciplined by a mere stern look from the coach, while a military-style drill sergeant chewing out will not faze another player. Coaches will know their players well enough to know who may holler "wolf" and who will not. When Victor Harris complained of feeling weak and needing a water break, Coach McCray told Harris he was "faking it." Unfortunately, he was not. Harris's injuries and resulting damages are not to be treated flippantly. However, we cannot fast-forward past the facts of this case and the applicable law just to arbitrarily impose liability in an attempt to right a perceived wrong.

While the facts of Victor Harris's case are no doubt tragic, we must realize the consequences of our decision today were we to find Coach McCray and the school district liable on the facts of this case. High school football coaches around the state would lose their ability to control their football teams. Discipline of a football team would become non-existent. If a coach refused a player's request to have a water break – to see a trainer – to not have to run any more wind-sprints – to not have to do any more one-on-one blocking/tackling drills, because of that player's complaint of "feeling weak" or "not feeling good" or simply "not feeling like it," that coach would be very much aware of the fact that he/she would be running the risk of being successfully sued along with other school officials and the school district, should that player later suffer physical/medical problems related to the coach's failure to cow to the player's every whim and wish. On the other hand, if the coach, in fear of a successful lawsuit, should cow to the player's every whim, wish and demand, then the coach would lose the respect of the players, and discipline and morale would be lost.

*Harris*, 867 So. 2d at 192-93. The District's discretionary decision to allow coaches the ability to set and conduct practices is rooted in policy – coaches know their players and must be able to control their teams.

¶15.    Although this Court is once again faced with a devastating and tragic situation because of the untimely death of a high-school student, we are constrained to find that the applicable provisions of the MTCA "operated to shield [the District and its coaches and

11

employees] from any liability." *Harris*, 867 So. 2d at 193. The exemption from liability found in Mississippi Code Section 11-46-9(1)(d) is applicable to today's case. As a result, the trial court's denial, in part, of the District's motion for summary judgment must be reversed.

## CONCLUSION

¶16. For the reasons stated, the Covington County Circuit Court's denial, in part, of the District's motion for summary judgment is reversed, and judgment is rendered here, *in toto*, in favor of the Covington County School District, thus granting summary judgment in full.

¶17. **REVERSED AND RENDERED.**

**WALLER, C.J., DICKINSON, RANDOLPH, LAMAR AND PIERCE, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, P.J. CHANDLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**KITCHENS, JUSTICE, DISSENTING:**

¶18. I agree with the majority and this Court's precedent that, as it stands, coordinating and supervising high school football practice are discretionary acts within the meaning of Mississippi Code Section 11-46-9(1)(d). *Prince v. Louisville Mun. Sch. Dist.*, 741 So. 2d 207 (Miss. 1999); *Harris v. McCray*, 867 So. 2d 188 (Miss. 2003). However, I respectfully dissent from the majority opinion's conclusion that the discretionary acts at issue in the present case were grounded in social, economic, or political policy, which would have to have been the case in order for statutory immunity to apply.

12

¶19.    It is well-settled that Mississippi Code Section 11-46-9(1)(d) does not bestow immunity for all discretionary governmental acts. *See, e.g.*, ***Jones v. Miss. Dep't of Transp.***, 744 So. 2d 256 (Miss. 1999); ***Stewart v. City of Jackson***, 804 So. 2d 1041 (Miss. 2002); ***Harris v. McCray***, 867 So. 2d 188 (Miss. 2004); Miss. Code Ann. § 11-46-9(1)(d) (Rev. 2002). "[O]nly those functions which by nature are policy decisions, whether made at the operational or planning level, are protected." ***Stewart***, 804 So. 2d at 1048 (quoting ***Jones***, 744 So. 2d at 260). Therefore, it must be determined "whether the [discretionary conduct] involved social, economic or political policy" before a discretionary act qualifies for immunity pursuant to Section 11-46-9. ***Stewart***, 804 So. 2d at 1047 (quoting ***Jones***, 744 So. 2d at 160); Miss. Code Ann. § 11-46-9 (Rev. 2002).

¶20.    In this case, in order to decide whether qualified immunity pursuant to Section 11-46-9 applies to the school district and its coaches, it must be determined whether the discretionary acts or omissions which led to the tragic death of Lonnie Magee were grounded in social, economic, or political policy. ***Jones***, 744 So. 2d at 261.

¶21.    ***Stewart v. City of Jackson***, 804 So. 2d 1041 (Miss. 2002), is helpful in making such a determination. The plaintiff in ***Stewart*** alleged that she fell and was injured when a bus driver employed by the City of Jackson failed to assist her into an adult day-care center. ***Id.*** at 1047-48. The plaintiff contended that, although the defendant bus driver was acting with discretion when she decided not to assist the plaintiff into the adult day-care center, the acts or omissions of the City of Jackson and the bus driver were not policy-based, and that, therefore, the City of Jackson was not immune pursuant to Section 11-46-9. ***Id.*** at 1048.

13

¶22. This Court agreed with the plaintiff, noting that it "must distinguish between real policy decisions implicating governmental functions and simple acts of negligence which injure innocent citizens." *Id.* (quoting *Gale v. Thomas*, 759 So. 2d 1150, 1162 (Miss. 1999)). The Court held that, because the acts or omissions of the city's bus driver did not involve real policy decisions implicating governmental functions, the Mississippi Tort Claims Act did not afford immunity protection to the City of Jackson. *Id.*

¶23. Here, it cannot be determined whether the defendant's discretionary acts were rooted in policy, because the record does not contain sufficient information. Given that this case is before us by way of interlocutory appeal from a partial denial of summary judgment, the plaintiff has not had sufficient opportunity to discover exactly what acts or omissions, if any, caused or contributed to the sudden demise of Lonnie Magee. The record is incomplete, as neither the plaintiff nor this Court knows what the coaches did or did not do on the day of Lonnie's death.

¶24. This Court cannot rule out that some discretionary conduct by some athletic coaches may be comparable to that of the bus driver in *Stewart*: neither rooted in social, economic, nor political policy nor contemplated by the Legislature when it enacted the MTCA. Given this Court's precedent and the limited record before us, I am unable to determine whether the relevant acts or omissions of the school district and the coaches of Mount Olive Attendance Center were rooted in social, economic, or political policy. I would hold that the trial judge did not err in denying the school district's summary judgment motion, and I would remand the case for further proceedings.

14

**GRAVES, P.J., JOINS THIS OPINION.**

**CHANDLER, JUSTICE, DISSENTING:**

¶25.    I respectfully dissent.  Because I believe the trial court properly denied summary judgment at this stage of the litigation, I would affirm the trial court.

## I.

¶26.    Mississippi Code Section 11-46-9 provides that a state governmental entity and its employees shall not be liable for any claim while acting within the course and scope of their employment and duties.  Miss. Code Ann. § 11-46-9(1) (Rev. 2002).  The statute provides for immunity, in part, for a claim "[a]rising out of any act or omission of an employee of a governmental entity exercising ordinary care in reliance upon, or in the execution or performance of, or in the failure to execute or perform, a statute, ordinance or regulation."  Miss. Code Ann. § 11-46-9(1)(b) (Rev. 2002).  As the majority correctly holds, a governmental entity and its employees have immunity, provided that ordinary care is used when performing a duty under a statute, ordinance, or regulation.  *Harris v. McCray*, 867 So. 2d 188, 189 (Miss. 2003); Miss. Code Ann. § 11-46-9(1)(b) (Rev. 2002).  Section 11-46-9(1)(d) provides immunity for discretionary acts performed within the course and scope of employment.  The immunity is "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused."  Miss. Code Ann. § 11-46-9(1)(d) (Rev. 2002).

15

¶27. This Court has distinguished what constitutes ministerial and discretionary acts. A ministerial act is a duty that "has been positively imposed by law and its performance required at a time and in a manner or under conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion." *Dancy v. East Miss. State Hosp.*, 944 So. 2d 10, 16 (Miss. 2006) (quoting *L.W. v. McComb Separate Mun. Sch. Dist.*, 754 So. 2d 1136, 1141 (Miss. 1999)). On the other hand, "[a] duty is discretionary if it requires the official to use her own judgment and discretion in the performance thereof." *Id.* (quoting *T.M. v. Noblitt*, 650 So. 2d 1340, 1343 (Miss. 1995)).

¶28. In order to determine whether the conduct at issue is discretionary in nature, this Court has imparted a two-prong test. The two-prong test to determine whether the governmental conduct is discretionary is: (1) does the conduct involve an element of choice or judgment on the part of the entity or employee; and if so, (2) does the choice or judgment involve social, economic, or political policy. *Dancy*, 944 So. 2d at 16; *Bridges v. Pearl River Valley Water Supply Dist.*, 793 So. 2d 584, 588 (Miss. 2001).

**II.**

¶29. Magee claims, in part, that the District had a duty to provide a safe environment for its students pursuant to Mississippi Code Sections 37-9-69 and 11-46-9(1)(b). The majority opined that "[s]ection 37-9-14 sets forth the responsibilities and powers of the superintendent, and in no way does this statute infer any duties pertaining to the oversight of athletic practices."

16

¶30. Section 37-9-69 provides:

*It shall be the duty of each superintendent, principal and teacher in the public schools of this state* to enforce in the schools the courses of study prescribed by law or by the state board of education, to comply with the law in distribution and use of free textbooks, and to observe and *enforce the statutes, rules and regulations prescribed for the operation of schools*. Such superintendents, principals and teachers shall hold the pupils to strict account for disorderly conduct at school, on the way to and from school, on the playgrounds, and during recess.

Miss. Code Ann. § 37-9-69 (Rev. 2007) (emphasis added). While the statute does not explicitly define the duties of a superintendent, principal, or teacher to oversee athletic practices, the statute does provide that they must "enforce the statutes, rules and regulations prescribed for the operation of schools." Miss. Code Ann. § 37-9-69.

¶31. The Court of Appeals in ***Dotts v. Pat Harrison Waterway District***, 933 So. 2d 322, 324 (Miss. Ct. App. 2006), held that an employee's duties are deemed ministerial if local agency rules impose specific guides to be followed. In ***Dotts***, the mother of a deceased boy brought a wrongful-death action against the Pat Harrison Waterway District (PHWD) pursuant to the Mississippi Torts Claim Act (MTCA) after his drowning death at Dunn's Falls. ***Id***. at 324. The Court of Appeals upheld the trial court's finding that PHWD had no statutory obligation for the operation of its swimming facility because Mississippi had no statute in place. ***Id***. at 326. However, the trial court did not end its analysis at this juncture.

¶32. In ***Dotts***, the trial court also considered PHWD's actions in regard to the operation of its facility. ***Dotts***, 933 So. 2d at 326. "[T]he trial court found that PHWD had discretion in making judgments regarding the exercise of its powers and functions in operating" the

17

swimming facility.  *Id*.  PHWD had a written, swimming policy in place.  *Id*. at 326-27.  In

its analysis of whether the activity was discretionary in nature, the Court of Appeals

summarized the trial court's decision by stating:

> The park manager of Dunn's Falls at the time of Holly's accident was Raford
> Williams.  He was the only employee on duty that day.  Although the trial
> court found that the PHWD was utilizing a discretionary function, the court
> held that *Williams did not have any discretion regarding the operation of
> Dunn's Falls.  Because of PHWD's policy, Williams' actions were ministerial.*
> Therefore, any evidence of Williams' knowledge that the back buoy line was
> missing or knowledge that the swimming area's configuration had changed
> would be violations of the policies of PHWD that would trigger liability under
> the MTCA.

*Id*. at 327 (emphasis added).

¶33.    The Court of Appeals also upheld the trial judge's finding of fact concerning

conflicting evidence.  *Id*. at 327.  In other words, the Court of Appeals upheld the trial

court's determination that while PHWD had discretion in adopting its policy concerning rules

for public swimming areas, its employee had no discretion, and the employee's conduct in

implementing the policy was ministerial in nature. *Id*. Further, any knowledge the employee

had that any activity or circumstances was contrary to the policy would have been a violation

of the policy that would have exposed PHWD to liability pursuant to the MTCA. *Id*.  In

*Dotts*, the employee overseeing the swimming facility died prior to taking a deposition,

therefore, the trial court determined that the issue of whether the employee had actual

knowledge of the swimming conditions could not be determined and PHWD was not liable

in that case. *Id*.  As noted, above, the Court of Appeals upheld the trial court's decision. *Id*.

18

¶34. Here, the discovery conducted was incomplete. Further, discovery is required in this case to allow the parties time to complete depositions at a minimum. This case is distinguishable from *Harris* and *Prince v. Louisville Municipal School District*, 741 So. 2d 207 (Miss. 1999), because the issue of whether a statute, regulation, or rule was violated was not considered by the Court in either of those cases.[5] At best, the record reveals a copy of the Mississippi High School Activities Association, Inc. (MHSAA) handbook, which pertains to the regulations of high school sporting activity. Indeed, this Court has recognized the MHSAA handbook as being a handbook that "regulates and provides guidelines for the schools to follow." *Pearl Pub. Sch. Dist. v. Groner*, 784 So. 2d 911, 915 (Miss. 2001).

¶35. Further, the parties have not had an opportunity to determine, for instance, whether the Covington County School District has a county operational policy similar to the written, operational policy in place in *Dotts* and whether it has operational procedures for athletics. Provided the District had a written, operational policy in place, the superintendent, principal, and teachers, including coaches, had a duty to enforce any rule or regulation pertaining to the operation of the schools in the district. *See* Miss. Code Ann. § 37-9-69 (Rev. 2007). These rules and regulations often are in the form of a school district's operational policy.

¶36. Unlike *Dotts*, however, Mississippi has a statute for school personnel, Section 37-9-69, which states in part that "*[i]t shall be the duty of each superintendent, principal and teacher in the public schools of this state . . . to observe and enforce the statutes, rules and*

---

[5] Both *Harris* and *Prince* involved injury to a student during a school athletics program.

19

*regulations prescribed for the operation of schools.* Miss. Code Ann. § 37-9-69 (Rev. 2007). The trial court recognized that total summary judgment in favor of the District was premature given the early stage of the case. Upholding the trial court's decision allows the parties an opportunity to discover whether the District had any county operational policy in place, what the policy stated in regard to athletics, and whether the procedures were followed. Further, it provides an opportunity to depose appropriate personnel.

¶37.    This case has implications of both ministerial and discretionary functions. *See Dotts*, 933 So. 2d at 326-27. Provided the District had a county operational policy, the District, similar to the PHWD, would have used discretion in making the policy. *Id*. at 327. A school district's operational policy, which is promulgated in accordance with the board's authority found in Section 37-9-67, would have to be reviewed to determine whether the employees, such as the superintendent, principal, teachers, and coaches, were implementing and following it on the date of this tragic incident. *Id*. at 327. Consequently, the issue of whether the personnel had only a ministerial function and either followed the policy or knowingly disregarded the policy also would have to be determined through depositions and other discovery. *Id*. Because of this, the trial court correctly determined that summary judgment on all issues was premature. Discovery is critical to determine whether the District had information such as an operational policy, what the policy terms stated, and whether personnel followed the policy or knowingly disregarded the policy.

**III.**

¶38.    For the above reasons, I dissent with the majority's opinion today.