CARLTON, J.,
for the Court:
¶ 1. Lutricia Magee appeals the Coving-ton County Circuit Court’s judgment granting Green Tree Family Medical Clinic, PLLC’s (Green Tree) motion for a judgment notwithstanding the verdict (JNOV) and denying the motion for new trial[1] and the trial court’s judgment of dismissal in favor of Green Tree. Lutricia raises the following assignments of error: (1) whether the trial court erred when it granted Green Tree’s motion for a JNOV on the ground that allowing a verdict in the plaintiffs favor would place the defendants as an insurer of the results of the pre-partic-ipation physical evaluation (PPE) because the plaintiff and her son, Lonnie Magee Jr., failed to provide vital medical information; (2) whether the trial court erred when it failed to admit into evidence facts established by the pleadings and/or admissions; and (3) whether the trial court erred when it instructed the jury, via “Jury Instruction D1-8A,” that if it finds from a preponderance of the evidence that Lonnie and/or his mother did not provide accurate information with regard to Lonnie’s health on August 7, 2007, then in that event, the plaintiff was negligent.
¶ 2. After reviewing the record before us, we affirm the trial court’s grant of the motion for a JNOV and judgment of dismissal with prejudice in favor of Green Tree.
FACTS
¶ 3. On August 8, 2007, Lonnie, a seventeen-year-old male, was a member of Mount Olive Attendance Center’s football team. During the course of football practice on that same day, Lonnie collapsed, and he was ultimately pronounced dead at Covington County Hospital (CCH) in Collins, Mississippi.
¶ 4. Just one day prior to his death, on August 7, 2007, Nurse Bettye Logan, F.N.P.,[2] performed a PPE on Lonnie at Green Tree’s clinic. Susan Oglesbee, a nurse practitioner for Green Tree, testified that coaches would bring the student athletes in large groups to Green Tree at a designated time for their PPEs, and Green Tree would perform the PPEs as a community service free of charge. Lonnie and several other student athletes were presented to Green Tree for PPEs that day. Nurse Logan testified that Lonnie arrived at Green Tree with an incomplete PPE form signed by his mother, Lutricia. Because a large portion of the PPE was left unanswered, including Lonnie’s prior medical history, Nurse Logan testified that she telephoned Lutricia and proceeded to question Lonnie and Lutricia as to the questions on the PPE form concerning Lonnie’s prior medical history. Nurse Logan testified that she asked Lutricia the following questions as to Lonnie’s prior medical history, to which Lutricia answered in the negative:
[I]f [Lonnie] had ever been diagnosed with a heart murmur? If he had ever fainted while exercising? Ever had diabetes? Ever had blood in his urine? ... Had he had any history of mononucleosis? Had he had any history of chest pains? Any history of seizures or epilepsy? Any asthma or wheezing? ... [D]id he use tobacco? ... [H]ad he ever had any surgery[?] ... [H]ad a doctor ever restricted Lonnie from any of [sic] sports participation^]
*745 [W]as [he] currently taking any medications or been prescribed any medi-eations[?]
Nurse Logan further testified that Lutri-cia provided that she had high blood pressure, but Lutricia failed to indicate that Lonnie or any other family member also suffered from high blood pressure or any other health issue. Based on the unremarkable medical history provided to Nurse Logan by Lonnie and his mother, Lutricia, along with the results of her screening evaluation, Nurse Logan cleared Lonnie to participate in football activities. The following day, Lonnie died at football practice. Lonnie’s death certificate showed that Lonnie died from a heat stroke, with significant conditions of hypertensive heart disease and morbid obesity-
¶ 5. The defendants produced evidence at trial showing that Lonnie and Lutricia gave false answers to Nurse Logan’s medical-history questions on the PPE form as set forth above.[3] The evidence provided by the defendants showed that Lonnie and his mother, Lutricia, told Nurse Logan that neither Lonnie nor any other family members, except Lutricia, experienced chest pains, asthma, or any other medical problems in the past. However, Lonnie actually possessed an ominous and extensive medical history, including: asthma, episodes of chest pain, one episode of abrupt onset of mid-chest pain and near syncope, possible malignant hypertension, a heart murmur, abnormal EKG results, use of high blood pressure medication,[4] and echocardiographic diagnosis of moderate concentric left ventricular hypertrophy. Lutricia inexplicably denied knowledge of a majority of Lonnie’s conditions as listed above. She admitted, however, that if Lonnie went to the doctor, she always carried him.
¶ 6. On February 6, 2008, following Lonnie’s death, Lutricia, individually, and on behalf of the wrongful-death beneficiaries of Lonnie, and all others who are entitled to recover under the wrongful-death statute (Lutricia), filed suit against Covington County School District (CCSD) in the Cov-ington County Circuit Court. Lutricia alleged negligence and res ipsa loquitur on behalf of CCSD.[5] Shortly thereafter, Lutri-cia filed her first amended complaint, adding John Doe Persons and John Doe Entities. On May 14, 2008, CCSD filed a motion for summary judgment, which the trial court granted in part and denied in part on July 2, 2008.
¶ 7. On July 3, 2008, Lutricia filed a second amended complaint, adding as defendants Green Tree, Nurse Logan, Dr. Word Johnston, and Dr. Joe Johnston, alleging that the medical providers committed medical negligence in connection with the PPE performed on Lonnie at Green Tree on August 7, 2007, and in their decision to clear him to play football based on *746 their PPE findings. Shortly thereafter, on July 11, 2008, Nurse Logan filed a motion to dismiss and separate answers and defenses to the second amended complaint, asserting therein that she worked as an employee of CCH, a community hospital, at all relevant times to the present case.
¶ 8. On August 28, 2008, the Mississippi Supreme Court granted CCSD’s interlocutory appeal on the trial court’s judgment wherein the court granted in part and denied in part CCSD’s motion for summary judgment.[6] Then, on December 28, 2008, Lutricia filed a third amended complaint naming CCH as a defendant, in light of Nurse Logan’s position at CCH at the time the PPE at issue was completed.
¶ 9. On March 10, 2009, Nurse Logan and CCH filed a motion for partial summary judgment, which the' trial court granted on May 7, 2009, thereby dismissing Nurse Logan individually, with prejudice, finding Nurse Logan .to be an employee of CCH, a governmental entity. In its order, the trial court further found that all of Nurse Logan’s activities at Green Tree in preparing the PPEs fell within the scope of her employment with CCH, affording her immunity for any act or omission performed by her with respect to Lutricia’s allegations in the complaint. The trial court provided that Nurse Logan was to remain in the suit solely as the representative for CCH. On May 14, 2009, the trial court entered a separate partial summary judgment, confirming Nurse Logan’s dismissal as an individual defendant, but the court reserved ruling as to whether Nurse Logan was a “borrowed servant” of Green Tree at the time the PPE at issue was performed.
¶ 10. On October 19, 2009, trial began in the Covington County Circuit Court. At the close of Lutricia’s case, the defendants moved for a’directed verdict, which the trial court granted, in part, dismissing with prejudice the individual claims against Dr. Johnston and Dr. Johnston. The defendants then presented their defense. After the parties rested, and during the jury-instruction conference, the trial judge amended his prior order dated May 7, 2007, finding that on August 7, 2007, Nurse Logan’s status constituted that of an employee of CCH, a government entity with immunity. The trial court, however, further found that Nurse Logan’s status constituted that of a borrowed servant of Green Tree during Lonnie’s PPE.[7] The trial court entered the order clarifying the May 7, 2009 order on November 10, 2009.
¶ 11. At the conclusion of the trial, the jury returned a verdict assessing Lutricia damages totaling $750,000. The jury allocated 50% fault to Green Tree and 50% fault to Lutricia. The trial judge entered a final judgment awarding Lutricia damages in the amount of $375,000 with interest. Shortly thereafter, Green Tree filed a motion for a JNOV or, in the alternative, for a new trial and also a supplement to the motion. On March 17, 2010, the trial court granted Green Tree’s JNOV motion. That same day, the trial court entered *747 judgments of dismissal with prejudice in favor of CCH and Green Tree.[8]
¶ 12. Additional facts, as necessary, will be provided in our discussion of the issues.
DISCUSSION
I. MOTION FOR A JNOV
¶ 18. In her first assignment of error, Lutricia argues the trial court improperly granted Green Tree’s motion for a JNOV. Lutricia asserts an abundance of evidence existed supporting findings that Green Tree had breached the standard of care owed to Lonnie on August 7, 2007, when Nurse Logan performed a PPE on him at Green Tree, and this breach caused and/or contributed to Lonnie’s death on August 8, 2007.
¶ 14. We review a trial court’s grant of a JNOV motion utilizing a de novo standard of review. Watts v. Radiator Specialty Co., 990 So.2d 143, 150-51 (¶ 21) (Miss.2008) (citing White v. Stewman, 932 So.2d 27, 32 (¶ 10) (Miss.2006)). “The motion for [a] JNOV tests the legal sufficiency of the evidence supporting the verdict. It asks the [appellate court] to hold, as a matter of law, that the verdict may not stand.” Id.
¶ 15. The Mississippi Supreme Court has stated that to establish a prima facie case of medical malpractice, the plaintiff must show:
(1) the defendant had a duty to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) the defendant failed to conform to that required standard; (3) the defendant’s breach of duty was a proximate cause of the plaintiffs injury, and; (4) the plaintiff was injured as a result.
McGee v. River Region Med. Ctr., 59 So.3d 575, 578 (¶ 9) (Miss.2011) (quoting Delta Reg’l Med. Ctr. v. Venton, 964 So.2d 500, 504 (¶ 8) (Miss.2007)). “The ‘general rule is that medical negligence may be established only by expert medical testimony, with an exception for instances where a layman can observe and understand the negligence as a matter of common sense and practical experience.’ ” Id. (quoting Coleman v. Rice, 706 So.2d 696, 698 (Miss.1997)). “The success of a plaintiff in establishing a case of medical malpractice rests heavily on the shoulders of the plaintiffs selected medical expert. The expert must articulate an objective standard of care.” Id. (quoting Estate of Northrop v. Hutto, 9 So.3d 381, 384 (¶ 10) (Miss.2009)). “Not only must an expert identify and articulate the requisite standard that was not complied with, the expert must also establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries.” Id. (quoting McDonald v. Mem’l Hosp., 8 So.3d 175, 180 (¶ 12) (Miss.2009)). In this case, Lutricia failed to articulate an objective *748 standard of care and also failed to show that a- breach of an objective standard of care occurred that proximately caused Lonnie’s death.
¶ 16. In its order granting Green Tree’s motion for a JNOV, and denying the motion for new trial, the trial court stated, in pertinent part, the following:
The [cjourt finds that the verdict in this case against the [djefendants, Bettye Logan, F.N.P., and Green Tree Family Medical Clinic, PLLC was against the overwhelming weight of the evidence and that[,j therefore, the [djefendant’s [mjotion for [jjudgment [njotwithstand-ing the [vjerdict should be granted.
The evidence in this case demonstrated conclusively that the [pjlaintiff and [pjlaintiffs deceased withheld vital history and medical information on each of the occasions that he was seen at Green Tree Family Medical Clinic. In 2005, [pjlaintiff and [pjlaintiffs deceased disavowed having ever passed out or lost consciousness, when the record demonstrated to the contrary. In August 2006, at the time of the [PPE] and physical examination, [pjlaintiff and [pjlain-tiffs deceased again withheld vital history and medical information, despite the fact that Lonnie Magee, Jr. had been seen by a cardiologist for assessment of his serious heart problems on May 30, 2006 — only 86 days before the PPE at Green Tree (August 24, 2006). Finally, at the time of the pre-participation physical evaluation of Nurse Practitioner, Bettye Logan at Green Tree Family Medical Clinic on August 7, 2007[,j the record is clear that critical information was withheld from Nurse Practitioner Logan. All of the physician experts at trial, specifically including the [pjlain-tiffs singular expert, Dr. [Christopher] Leggett, testified that the history obtained from the patient was critically important in a pre-participation physical screening, and that student athletes (and their parents) have an implicit duty to use reasonable care to protect their own health and safety as part of the pre-participation screening process. As such, players and parents have a duty to be truthful in providing their medical history with accurate responses to the historical questions and any material information that may be pertinent to their health.
Because the [pjlaintiff and [pjlaintiffs deceased failed to provide vital medical information and withheld critical historical information from the healthcare provider performing the pre-participation physical evaluation, to allow a verdict in [pjlaintiffs favor in this medical malpractice case to stand would be to place the healthcare provider in the position of being an “insurer” of the results of the [PPE]. Mississippi law has consistently held that a healthcare provider is not an insurer or guarantor of the success of the care and treatment rendered. Hudson v. Taleff, 546 So.2d 359 (Miss.1989); Walker v. Skiwski, 529 So.2d 184 (Miss.1988); Day v. Morrison, 657 So.2d 808 (Miss.1995). In light of this determination, it is not necessary for the [cjourt to reach this [djefendant’s other assignments [of error].[9]
*749 ¶ 17. In applying the applicable de novo standard of review to both the trial court’s grant of the motion for a JNOV and denial of the motion for a new trial, we find no error. The record reflects, as found by the trial court, that Green Tree was entitled to judgment in its favor since Lutricia had presented no evidence of a breach of the standard of care by Nurse Logan.[10] As noted by the trial court, the patient bears the responsibility to provide proper medical history to the medical provider;[11] and from our review of the record, the trial court accurately assessed that Lonnie and Lutricia not only failed to provide Nurse Logan with vital medical information during Lonnie’s PPE, but inexplicably they provided false information about Lonnie’s medical history to Nurse Logan to rely upon in conducting the PPE. The record further reflects that Lutricia failed to prove by objective medical evidence that Nurse Logan, acting as a nurse practitioner during Lonnie’s 2007 PPE at Green Tree, breached the applicable objective standard of care for nurse practitioners performing PPEs on student athletes for clearance for sports participation.
A. 2007 PPE
¶ 18. The evidence in the record before this Court shows Lonnie arrived for the PPE at Green Tree with an incomplete PPE form signed by his mother, Lutricia. The record additionally shows that Nurse Logan refused to clear Lonnie for sports participation until she spoke with Lutricia regarding Lonnie’s prior medical history. Nurse Logan then telephoned Lonnie’s mother, Lutricia, and questioned her as to Lonnie’s medical history. The record reflects that Lonnie and his mother, Lutricia, provided Nurse Logan with a false medical history which indicated that Lonnie possessed no history of a heart condition, high blood pressure, and any other medical ailments. Evidence presented at trial, however, showed that Lutricia provided a patently false medical history. Unbeknownst to Nurse Logan, Lonnie’s prior medical records with other medical providers and other clinics verified Lonnie’s previous diagnosis of serious heart problems and history of elevated blood pressure. However, based on the unremarkable medical history provided by Lonnie and his mother to Nurse Logan to conduct his PPE, and based on Nurse Logan’s physical findings on the day of the PPE, Nurse Logan cleared Lonnie to play sports.
¶ 19. Defense testimony established the parameters of a PPE and the standards of practice for conducting them. The defense tendered Dr. William Sorey as an expert in the fields of pediatric and adolescent medicine and specifically with regard to the subject matter of PPEs in student *750 athletes.[12] In his expert testimony, Dr. Sorey explained that a PPE differs from a comprehensive and detailed physical examination at a medical provider’s office. Dr. Sorey further testified that a PPE is a screening examination that relies on the medical history obtained from the child’s family[13] to identify and to raise existing health issues that may cause problems with certain sporting activities. He explained that schools require the PPEs in order to participate in athletic activities, and the PPEs are often conducted at a coliseum or other public location as a public service. Dr. Sorey further stated Nurse Logan conducted an adequate sports physical assessment and actually “went above and beyond” that which was expected when performing Lonnie’s PPE when faced with an incomplete PPE form. Dr. Sorey explained that Nurse Logan telephoned Lonnie’s mother to question her about Lonnie’s past medical history to complete the medical history for the PPE form before clearing him for sports participation. Dr. Sorey explained the patient bears the responsibility to complete the PPE form with his or her medical history prior to the PPE being performed.[14]
¶ 20. Defense testimony also established the compliance by Nurse Logan with the objective criteria and the standard of care for PPEs. Dr. Malcolm Taylor also testified for the defense as an expert tendered in the field of cardiology, PPEs, and sudden cardiac death in athletes. Similar to the testimony of Dr. Sorey, Dr. Taylor testified that Nurse Logan’s PPE examination of Lonnie at Green Tree on August 7, 2007, met the objective standard of care for this type of evaluation, “and [it] actually maybe went a little further than what [was] normally [done].” Dr. Taylor further testified that “[Nurse Logan’s] examination was thorough and detailed, including a [medical] history [and] an examination. So[,] she did what was supposed to be done in that situation.”
¶ 21. In contrast, plaintiffs expert, Dr. Christopher Leggett, testified, in his opinion, Nurse Logan missed an opportunity to further evaluate Lonnie before allowing sports participation, and thereby breached the standard of care when performing Lonnie’s PPE at Green Tree on August 7, 2007. Dr. Leggett testified to the following:
I think on that day in question irrespective of the information that his mother or he was able to provide from a history standpoint, I think we missed an opportunity to save this young man as a medical community and as a person providing the care, who in this case I believe was Ms. Logan. I think she missed an opportunity to set him aside and say, we need to further evaluate you before we allow you to participate in sports. And with that said, it is my belief that the standard of medical care was not met.
*751 ¶ 22. Lutricia argues, regardless of the false medical history provided to Nurse Logan to rely upon in conducting the PPE of her son, Nurse Logan inappropriately cleared Lonnie for football activities without further evaluation based on the red flags that Dr. Leggett identified and based upon the findings of the PPE alone. Lu-tricia points to the testimony of Dr. Leg-gett, her expert witness, who testified that Lonnie’s PPE revealed: (1) elevated blood pressure; (2) severe obesity; and (B) the fact that Lonnie was an African American male and in a high-risk group for sudden cardiac death. Dr. Leggett testified that these findings show Nurse Logan failed to meet the standard of care.
¶ 23. The record shows, however, that Dr. Leggett used criteria for adults, and a review of the record fails to reveal any objective evidence showing that using adult criteria constituted the standard of care applicable to Lonnie. Instead, the record shows the expert testimony and evidence established that the objective standard of care applicable herein required the pediatric criteria be applied to Lonnie’s age group when evaluating Lonnie’s PPE findings and any indications raised by them. Dr. Leggett’s testimony reflects his own personal views instead of a generally accepted objective standard of care, and Dr. Leggett failed to provide any support for his contention that Nurse Logan breached an objective standard of care. The record further reflects that Dr. Leg-gett possessed no familiarity with the standards or procedures applicable to PPEs. Dr. Leggett testified at trial that he had never performed a traditional PPE like the one at issue in the present case, and the record shows that Lutricia tendered Dr. Leggett as an expert in the field of inter-ventional cardiology. With respect to the scope of his experience and practice, deposition testimony presented at trial also showed that Dr. Leggett saw no pediatric patients in his practice.[15] As to Dr. Leg-gett’s testimony asserting he believed Lonnie’s blood pressure reading of 140/86 at the PPE on August 7, 2007, was elevated, and constituted an alleged red flag, we find his assertion was not supported by any objective criteria or objective standard of care. No evidence from Dr. Leggett, or otherwise, established that Dr. Leggett used the applicable criteria for Lonnie in accordance with the accepted objective standard of care. Instead, the record shows Dr. Leggett used the adult section of the criteria published by the National Joint Committee in rendering his opinion, rather than the applicable objective criteria pertaining to pediatrics applicable to Lonnie’s age.
¶ 24. The record shows that while Dr. Leggett opined that Lonnie’s obesity and race were “red flags,” no objective criteria supported his asserted opinion. The record established that a Body Mass Index (BMI) of a seventeen-year-old male with a height of 6'5" and weight of 297 pounds, like Lonnie, was a 35. The record, therefore, shows that Lonnie’s weight posed no red flag based upon objective national standards, as the standards provided by the National Institutes of Health show that a BMI of 35 is moderately obese, not severe or morbidly obese as asserted by Dr. Leggett. See Patterson v. Tibbs, 60 So.3d 742, 757 (¶ 48) (Miss.2011). As to the issue of Lonnie’s race, Dr. Taylor testified that he had researched hypertension *752 and heart failure as it related to African Americans, and he would not have failed to clear Lonnie for sports participation based upon Lonnie’s race. The record contains no evidence of objective applicable medical standards, and it contains no evidence of any breach of applicable standards or showing negligence by Nurse Logan in clearing Lonnie for sports based upon his medical history provided by him and his mother, on his race, and the PPE and its findings.
¶ 25. Defense experts established that the objective criteria applicable to pediatrics applied to the PPE findings and the standard of care in this case. Dr. Taylor, testified while Lonnie may have been large, he still fell within the objective pediatric criteria for his age. Dr. Taylor testified that in accordance with the criteria presented by the American Academy of Pediatrics and the Center for Disease Control (CDC), Lonnie’s blood pressure of 140/86 was not considered elevated by objective definitive standards for his age:
For his age, height, that’s a normal blood pressure. That’s no significance. I would say probably he was a little bit nervous as well. So it’s probably higher than it normally is. Because a child coming to see a doctor usually is going to be a little bit more nervous. So it’s probably around — even lower than that.... But that’s a normal blood pressure for his size and weight. And I think that’s been adequately demonstrated. On the pediatric tables, that is normal blood pressure for someone that size.... [Tjhat blood pressure would not disturb me at all. In fact, I want him to exercise because I want him to be healthier. I want him to be strong as a child. So I would encourage him. I want him to play sports. So, that blood pressure would not be a flag. And that blood pressure, based on the pediatric tables, is a normal blood pressure. So, there’s no reason to flag it.... And the American Academy of Pediatrics helps define those blood pressures. The CDC helps to define the blood pressure, what’s normal in a child. And this — he’s 17 years old. Even though he is big, he’s still a child.
Lutricia failed to provide evidence to refute the applicability of pediatric criteria as established by the American Academy of Pediatrics and the CDC and failed to establish the applicability of some other objective criteria. More specifically, Lu-tricia failed to provide evidence that the adult criteria relied upon by her expert, Dr. Leggett, applied in this case. Thus, without proof to the contrary, the record shows the testimony established that the criteria presented by the American Academy of Pediatrics and the CDC constituted the general accepted standard of care. Objective evidence presented at trial showed that Lonnie’s blood pressure fell within the normal range for his age, and no evidence showed that Nurse Logan should have been aware of Lonnie’s underlying heart condition, in context of the false prior medical history provided by Lonnie and his mother, Lutricia, and the objective PPE findings. Therefore, we find that Lutricia provided no evidence of a breach of the objective medical standards. Since Lutricia failed to provide evidence of a breach of an objective medical standard of care, then she failed to show any negligence in the PPE conducted by Nurse Logan.
¶ 26. After reviewing the record, we find that Lutricia, in her attempted efforts through Dr. Leggett’s testimony, failed to provide a sufficient objective standard of care in support of her case, and more importantly, Lutricia failed to prove that Nurse Logan breached the objective standard of care. We further find that the record reflects Dr. Leggett, while assert *753 ing to testify as to the applicable standard of care, instead provided his subjective opinion, rather than objective standards of care based on objective evidence and criteria. See Hutto, 9 So.3d at 384 (¶ 9) (“The standard articulated must be objective, not subjective.... [Ejmphasis is given the proposition that physicians incur civil liability only when the quality of care they render falls below objectively ascertained minimally acceptable levels.”). Accordingly, we find that the trial court erred in submitting the case to the jury without sufficient evidence of Nurse Logan’s, or Green Tree’s, negligent breach of the standard of care based upon the objective standard of care and objective criteria. We find, however, that the trial court corrected its error post-trial by granting Green Tree’s motion for a JNOV. See Watts, 990 So.2d at 150-51 (¶ 21) (providing this Court’s standard of review of a trial court’s grant of a motion for a JNOV as de novo).
¶ 27. Based on the foregoing, we find no merit to Lutricia’s argument.
B. Retention of Lonnie’s 2005 PPE
¶ 28. Lutricia also attempts to show Green Tree breached the applicable standard of care in the PPE conducted in 2007 by Nurse Logan by not retaining a copy of a past PPE of Lonnie from 2005 wherein Nurse Oglesbee, a different nurse practitioner at Green Tree, refused to clear Lonnie for sports participation in 2005 until he followed up with his family physician due to Lonnie’s elevated blood pressure found in the PPE.[16] However, we find Lutricia failed to provide objective evidence at trial to show that Green Tree failed to comply with the usual practice and standard of practice for the storage of PPEs by medical providers for non-patient athletes,[17] or that a breach of the standard of care occurred by a failure of Green Tree to keep a copy of the 2005 PPE of a non-patient athlete. The record shows Dr. Taylor and Dr. Sorey both testified that in the standard of practice and in the common practice, medical providers do not keep copies of PPE forms for athletes who were not their patients. The physicians testified that the students normally kept the PPE forms and then provided the PPE forms to the school or to the coach of the athletic team that initially required the form for sports participation. Additionally, the record shows PPEs are often conducted off site at a public location like a coliseum or school instead of a medical provider’s office. The record further reflects that built into the PPE form, the patient, and his parent or guardian, bear the responsibility to provide the medical provider with an accurate medical history each time a PPE is conducted so the medical provider performing the PPE would be informed of any current concerning medical issues related to sports participation as reflected in the medical history set forth on the PPE form by the patient and his parent or guardian. Accordingly, we find no merit to this argument.
C. Jury Instruction D1-8A
¶ 29. Additionally, Lutricia argues that the trial court erred in instructing the jury via “Jury Instruction D1-8A,” that if it finds from a preponderance of the evidence that Lonnie and/or his mother did not provide accurate information with regard to Lonnie’s health on August 7, 2007, then in that event, the plaintiff was negligent. Lutricia claims that because the *754 present case is a medical-negligence case, she, as a non-physician, cannot be held medically negligent. Lutrieia alleges that as a result of the erroneous jury instruction given by the trial court, the jury incorrectly allocated 50% fault to her.
¶ 30. Because we have found no error in the trial court’s subsequent grant of the motion for a JNOV, we find the issue as to whether the trial court properly submitted jury instruction D1-8A to the jury is thereby rendered moot.[18]
II. REQUEST FOR ADMISSIONS
¶ 31. Lutrieia contends that on October 16, 2009, during the pre-trial conference, her counsel requested that the trial court decide the issue of whether Lonnie was morbidly obese on August 7, 2007, because the defendants, Green Tree, Dr. Johnston, and Dr. Johnston, admitted this fact via their responses to requests for admission. Lutrieia asserts that the trial court responded: “You show me, Mr. Collier [Lu-tricia’s counsel], where they admitted it, not now. When you get ready to offer it, show it to me, and show me it’s relevant, and I’ll let you tell the jury.” Lutrieia further claims that on October 19, 2009, on the first day of trial, Lutrieia filed a “Motion to Admit into Evidence Facts Established as a Matter of Law or by Pleadings, Admissions, Stipulations!!,] or Deposition Testimony.”
¶ 32. Lutrieia claims that she recalls her counsel’s request for the trial court to hear this motion and to specifically admit into evidence the subject requests for admission at issue at the beginning of the trial on October 19, 2009. However, the trial court did not grant or take up the motion. Significantly, Lutrieia admits there is no record or transcript of this October 19, 2009 dialogue. Moreover, the record shows Lutrieia never sought to introduce the admission responses into evidence, which she bore the duty to seek.[19]
¶ 33. Nevertheless, Lutrieia requests that this Court review this matter for error, arguing that the trial court should have allowed this fact into evidence and instructed the jury that Lonnie was morbidly obese. Lutrieia also argues that the trial court should have considered the fact that Green Tree admitted, via its responses for admissions, that Lonnie was morbidly obese when it decided to eradicate the jury’s verdict and grant the motion for a JNOV. Furthermore, Lutrieia asserts, pursuant to Mississippi Rule of Civil Procedure 36(a), the trial court should have determined the final disposition of the subject requests for admission at the pre-trial conference or at a designated time prior to trial.
¶ 34. As stated, the record shows Lutrieia first requested at the pretrial conference that the trial court instruct the jury that the defendants admitted that Lonnie was morbidly obese via responses to requests for admission. The following exchange occurred between Lu-tricia’s attorney, Mr. Gerald Collier, and the court:
[COLLIER]: The last thing, Your Hon- or, is we sent the defendants requests] for admission[ ], and one of the requests] for admissionf ] was to admit whether or not—
[[Image here]]
*755 [COLLIER]: We sent the defendant Green Tree some requests for admission ], and one of the requests] stated for them to submit whether or not Lonnie Magee was morbidly obese on August 7 when he had his physical, and they admitted it. I want it to be stipulated and read to the facts.
[COURT]: Fine.
[GHOLSON]:[20] I’ll have to go back and check. He hasn’t asked me about that until now.
[COURT]: Well, as I understand it, you know, any answers in discovery can be admitted into evidence as long as it’s relevant.
[RAMSAY]:[21] Well, I can tell the [e]ourt this defendant has never admitted that he was morbidly obese, and the scientific literature would demonstrate that he was not morbidly obese. He certainly was severely obese but not to the extent of, quote, morbidity.
[COURT]: Well, I don’t know if what’s [sic] been admitted or not. We’ll just wait and see.
[RAMSAY]: Right.
[COURT]: You show me, Mr. Collier, where they admitted it, not now. When you get ready to offer it, show it to me, and show me it’s relevant, and I’ll let you tell the jury.
While Lutricia’s “Motion to Admit into Evidence Facts Established as a Matter of Law or by Pleadings, Admissions, Stipulations[,] or Deposition Testimony,” dated October 19, 2009, appears in the record, we find neither any request by Lutricia for the trial court to hear the motion or to admit the responses to the requests for admission into evidence nor any demonstration to the court regarding the relevance of the evidence[22] in the context of other admitted evidence. In her appellate reply brief, Lutricia acknowledges its absence from the record, stating the following:
On October 19, 2009, on the first day of trial, in response to the court’s aforementioned position on this matter at the pre-trial conference/hearing, Lutricia Magee, via counsel, filed a “Motion to Admit into Evidence Facts Established as a Matter of Law or by Pleadings, Admissions, Stipulations^] or Deposition Testimony.” Specifically, Plaintiff requested that the court admit into evidence the fact that Lonnie C. Magee, Jr. was morbidly obese on the ground that Green Tree Family Medical Clinic, PLLC, Dr. Word Johnston, and Dr. Joe Johnston admitted that Lonnie C. Ma-gee, Jr. was morbidly obese via their Responses to Plaintiffs Requests] for Admission[]. It is the recollection of [plaintiffs counsel that he requested that the [c]ourt hear this [m]otion and specifically admit into evidence the subject requests for admission at issue, at the beginning of trial on October 19, 2009, but the trial court did not grant nor take-up [sic] the motion. Also, it appears that there is no record or transcript of this dialogue. It is surprising and unfortunate that this does not appear on the record.
“It is well-settled law that it is the responsibility of the appellant to present a record sufficient to support his assignments of error.” Boyd Tunica, Inc. v. Premier Transp. Servs., Inc., 30 So.3d 1242, 1248 *756 (¶ 16) (Miss.Ct.App.2010) (citation omitted). Furthermore, we recognize that “ ‘the affirmative duty rests upon the party filing the motion to follow up his action by bringing it to the attention of the trial court.’ A motion that is not ruled upon is presumed abandoned.” Cossitt v. Alfa Ins. Corp., 726 So.2d 132, 135 (¶ 12) (Miss.1998) (internal citations omitted).
¶ 35. Based on the foregoing, we find no merit to this assignment of error.
III. BORROWED-SERVANT LIABILITY
¶ 36. While not raised as an issue in the notice of appeal by Lutricia, Green Tree argues in its appellate brief that the trial court’s grant of the motion for a JNOV overcame its erroneous ruling that Nurse Logan was a borrowed servant of Green Tree. Green Tree argues that in the event this Court reverses and remands the case for a new trial, this Court should also reverse the trial court’s order on November 10, 2009, wherein it nunc pro tunc ruled that Nurse Logan was a borrowed servant of Green Tree.
¶ 37. In her reply brief, Lutricia asserts Green Tree is barred from bringing this issue before the Court because Green Tree failed to preserve its right to appeal the issue due to its failure to file a notice of appeal for a cross-appeal of the court’s ruling on the borrowed-servant issue. We agree.
¶ 38. Pursuant to Rule 4(c) of the Mississippi Rules of Appellate Procedure, once a timely notice of appeal is filed by a party, “any other party may file a notice of appeal within 14 days after the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this rule, whichever period last expires.” The comment to Rule 4(c) elaborates on this rule, providing:
The notice of appeal requirement applies to all forms of appeal including cross appeals. Rule 4(c) requires that a notice of appeal for a cross appeal be filed within 14 days after the date on which the first notice of appeal was filed, unless a longer period is prescribed by another provision of Rule 4.
After reviewing the record, we find no notice of appeal filed by Green Tree for its appeal of this issue. Therefore, Green Tree has failed to place the issue properly before this Court. Furthermore, we acknowledge this issue fails to impact the outcome of our disposition on appeal since we affirm the trial court’s grant of the motion for a JNOV due to Lutricia’s failure to present objective medical evidence of breach of the applicable standard of care in conducting PPEs.
¶ 39. THE JUDGMENT OF THE COVINGTON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. RUSSELL, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY IRVING, P.J. FAIR, J., NOT PARTICIPATING.

. Lutricia alleges in her appellate brief that this JNOV motion was filed by Green Tree and Nurse Bettye Logan; however, the motion itself, along with the trial court’s order granting the motion for a JNOV, show that the motion was filed solely by Green Tree.

. Logan testified that she worked for CCH at the Green Tree clinic.

. In fact, the defendants presented evidence at trial showing that while Lonnie presented to the Green Tree clinic for PPEs in 2005, 2006, and 2007, and also for a Medicaid-approved well-child examination in 2006, neither Lutricia nor Lonnie mentioned any of Lonnie's serious medical conditions to the Green Tree medical providers at any time.

. The evidence also showed that Lonnie's prescription for high blood pressure was only filled once, even though he was allowed two refills.

.In her appellate brief, Lutricia explains: "The original complaint contained allegations against [CCSD] for negligence in failing to provide a safe environment for its students and failing to exercise ordinary care and take reasonable steps to minimize risks to students by allowing football practice(s) to be conducted during extremely dangerous, hot[,] and humid August temperatures.''

. On January 28, 2010, the Mississippi Supreme Court found the trial court erred and that the court should have granted CCSD’s motion for summary judgment in tato since the applicable provisions of the Mississippi Tort Claims Act "operated to shield the District and its coaches and employees from any liability.” See Covington County Sch. Dist. v. Magee, 29 So.3d 1, 8 (¶¶ 15-16) (Miss.2010).
The supreme court reversed the trial court's order and rendered judgment in favor of CCSD. Id.

. We pause to note that the trial court issued this borrowed-servant finding even though Nurse Logan had been dismissed with prejudice, individually, and had been found to be an employee of CCH with immunity.

. On appeal, CCH argues that while Lutricia listed the trial court’s order dismissing CCH with prejudice in her notice of appeal, Lutri-cia barely mentions CCH in her appellate brief; makes no assignment of error in her appellate brief’s "Statement of Issues” regarding the entry of judgment by the trial court, as the fact-finder, in favor of CCH, a governmental entity; nor presents a prayer for relief reversing the trial court’s entry of judgment in favor of CCH. CCH alleges Lutri-cia, therefore, waived her right to appeal the trial court's entry of judgment in favor of CCH. Lutricia responds to CCH's allegations in her reply brief by stating; "[CCH] does not have a ‘dog’ in this fight since Green Tree has waived its right to appeal the borrowed servant issue[,]” and CCH’s brief should not be considered by this Court. Because it appears Lutricia and CCH are in agreement that this appeal does not involve CCH, we will only review Lutricia’s assignments of error as pertaining to Green Tree.

. In the trial court's order granting the motion for a JNOV, the trial court further stated:
As to the [djefendant, Covington County Hospital, this [cjourt previously ruled that Covington County Hospital, as a community hospital as defined in Miss.Code Ann. § 41-13-10, is subject to the limited waiver of immunity of the State and its political subdivisions pursuant to § 11-46-1, et seq. Consequently, this [cjourt is obligated to hear and determine without a jury the suit filed against Covington County Hospital based upon its vicarious liability of Nurse Practitioner Bettye Logan as an employee *749 of Covington County Hospital. For the reasons cited above, the [c]ourt finds that the separate motion of the [defendant, Coving-ton County Hospital[,] for the entry of judgment is well-taken, and that judgment should be entered in favor of the [defendant, Covington County Hospital.

. See Berry v. Patten, 51 So.3d 934, 945 (¶ 45) (Miss.2010) ("Plaintiffs in a medical-malpractice action must establish through expert testimony not only the relevant standard of care, but the manner in which the defendant breached it. In this case, the plaintiffs failed to establish through expert testimony a [Certified Registered Nurse Anesthetist’s] standard of care, or that [Kevin] Berry had breached it.”).

. See generally Foster ex rel. Foster v. Bass, 575 So.2d 967, 980 (Miss.1990) (quoting Michael J. v. County of Los Angeles, Dep’t of Adoptions, 201 Cal.App.3d 859, 247 Cal.Rptr. 504, 513 (1988) (”[T]here must be a good faith full disclosure of material facts concerning existing or past conditions of the child’s health.... Public policy cannot extend to condone concealment or intentional misrepresentation. ...")).

. Dr. Sorey testified that he wrote an article on sports physicals directed at providing family physicians and pediatricians around Mississippi with a standardized PPE form.

. The PPE form requires the medical history be completed prior to evaluation and requires the signature of a parent or guardian.

. See Patterson v. Tibbs, 60 So.3d 742, 757 (¶ 48) (Miss.2011) ("Given the circumstances of each patient, each care giver [sic] has the duty to use his or her knowledge and treat, through maximum reasonable medical recovery, each patient with such reasonable diligence, patience, skill, confidence, and prudence as are practiced by minimally competent care givers [sic] in the same specialty or general field of practice throughout the United States, who have available to them the same general facilities, services, equipment, and options.”) (citations omitted).

. Specifically, when asked during Dr. Leg-gett’s deposition if had ever performed a PPE in his practice, Dr. Leggett stated: "I have personally not. I am absolutely trying to remember if I have ever seen a kid for purposes of clearance for sports other than my own, and I think the answer to that again is no, because I actually don’t see kids in my practice.”

. The record shows Lonnie subsequently saw Dr. Brian Kerrigan at the Family Medical Clinic in 2005 who conducted an examination and cleared Lonnie to play sports.

. Nurse Oglesbee testified that when the PPE was conducted in 2005, Lonnie had never been a patient of Green Tree.

. See generally Dancy Co., Inc. v. Mooneyham, 68 So.3d 76, 84 (¶ 14) (Miss.Ct.App.2011) ("As Issue I is case-dispositive, the remaining issue is rendered moot.").

. See Miss. Dep’t of Mental Health v. Hall, 936 So.2d 917, 928 (¶ 34) (Miss.2006) ("To the appellant falls the duty of insuring that the record contains sufficient evidence to support his assignments of error on appeal.”).

. Robert Gholson was trial counsel for Green Tree, Dr. Johnston, and Dr. Johnston.

. Robert Ramsay was trial counsel for Nurse Logan and CCH.

.Evidence must be relevant to be admissible. M.R.E. 402.